UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA
------------------------------------------------------------x

ANDREW R. PERRONG,                                    INDEX NO.: 22 CIV. 03733 (JFM)

                              Plaintiff,

   -  against -


CMI MARKETING RESEARCH INC. et al.

                            Defendants.

------------------------------------------------------------x


**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION**
**PURSUANT TO FRCP 12b(6) TO DISMISS PLAINTIFF'S COMPLAINT**


**HILL, BETTS & NASH LLP**
Elizabeth A. McCoy (EAM -8448)
(*Admitted Pro Hac Vice)*
Attorneys for Defendants
14 Wall Street, Suite 5H
New York, New York 10005
(212) 839-7000

George Zacharkow, Esq.
Deasey, Mahoney & Valentini, Ltd.
1601 Market Street, Suite 3400
Philadelphia, PA 19103
(215) 587-9400

# TABLE OF CONTENTS

FACTS ..................................................................................................................................1

STANDARD OF REVIEW ...................................................................................................3

POINT I   PLAINTIFF HAS FAILED TO STATE A CLAIM UNDER COUNT I ALLEGING
VIOLATION OF THE TCPA'S PROHIBITION AGAINST CALLING WITH AN ATDS.........4

POINT II   PLAINTIFF HAS FAILED TO STATE A CLAIM UNDER COUNT II ALLEGING
VIOLATION OF THE PENNSYLVANIA TELEMARKETER REGISTRATION ACT, 73 PA.
CONS. STAT §2241 ..............................................................................................................9

POINT III PLAINTIFF HAS FAILED TO STATE A CLAIM UNDER COUNT III
ALLEGING VIOLATION OF THE TCPA'S IMPLEMENTING REGULATIONS CODIFIED
IN 47 CFR §64.1200............................................................................................................13

CONCLUSION.....................................................................................................................18

CERTIFICATION IN ACCORDANCE WITH JUDGE MURPHY'S
INDIVIDUAL RULE 5 .......................................................................................................19

# TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ....................... 3

*Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).. 3

*Camunas v. Nat'l Republican Senatorial Comm.*, 541 F. Supp. 3d 595 (E.D. Pa. 2021) ....... 7,8,16

*Conard v. Pa. State Police,* 902 F.3d 178 (3d Cir. 2018) ............................................................. 3

*Connecticut Nat. Bank v. Germain*, 503 U.S. 249, 112 S. Ct. 1146, 117 L. Ed.
    2d 391 (1992).................................................................................................................................. 15

*Deleo v. Nat'l Republican Senatorial Comm.*, 2021 U.S. Dist. LEXIS 210858, 2021 WL 5083831
    (D.N.J. November 1, 2021)............................................................................................................. 7

*Douek v. Bank of Am. Corp.*, Civ. 2017 U.S. Dist. LEXIS 141785, 2017 WL 3835700
    (D.N.J. Sept. 1, 2017) .................................................................................................................... 8

*Facebook, Inc. v. Duguid*, 141 S. Ct. 1163, 209 L. Ed. 2d 272 (2021) ........................................... 4

*Hazan v. Wells Fargo & Co.*, 2019 U.S. Dist. LEXIS 72748, 2019 WL 1923272
    (D.N.J. Apr. 30, 2019) ................................................................................................................... 8

*Idahoan Fresh v. Advantage Produce, Inc.*, 157 F.3d 197 (3d Cir. 1998) .................................. 15

*In re Philadelphia Newspapers, LLC*, 599 F.3d 298 (3d Cir. 2010), *as amended* (May 7, 2010) 15

*Jordan v. Fox, Rothschild, O'Brien & Frank*el, 20 F.3d 1250 (3d Cir. 1994)................................ 3

*McCann v. Unum Provident*, 907 F.3d 130 (3d Cir. 2018) ......................................................... 14

*Montinola v. Synchrony Bank*, 2018 U.S. Dist. LEXIS 146716, 2018 WL 4110940
    (D.N.J. Aug. 28, 2018).................................................................................................................... 8

*Panzarella v. Navient Sols., Inc.*, 37 F.4th 867 (3d Cir. 2022),.................................................... 5

*Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed 2d 209 (1986) ........................ 3

*Perrong v. MLA Int'l, Inx.*, 2022 U.S. Dist. LEXIS 36759, 2022 WL 1238603
    (M.D.Fl. March 2, 2022)............................................................................................................... 10

*Perrong v. South Bay Energy Corp.*, 2021 U.S. Dist. LEXIS 70715, 2021 WL 1387506
    (E.D.Pa. April 13, 2021) ....................................................................................................... 13, 15

*Shelton v. FCS Capital LLC*, 2019 U.S. Dist. LEXIS 213179, 2019 WL 6726404
    (E.D.Pa. December 11, 2019) ........................................................................................................ 9

*Smith v. Direct Bldg. Supplies, LLC*, 2021 U.S. Dist. LEXIS 193657, 2021 WL 4623275
    (E.D.Pa. October 7, 2021);............................................................................................................. 8

*Smith v. Pro Custom Solar LLC*, 2021 U.S. Dist. LEXIS 8616, 2021 WL 141336
    (D.N.J. Jan 25, 2021) ................................................................................................................ 8, 9

*Todd v. Citibank*, 2017 U.S. Dist. LEXIS 63402, 2017 WL 1502796 (D.N.J. Apr. 26, 2017) ...... 8

## Statutes

47 CFR §64.1200 ....................................................................................................... 2, 13,16, 17

Telephone Consumer Protection Act, 47 U.S.C. §227 et. seq. ....................................... 4, 10, 13,14

Pennsylvania Telemarketer Registration Act, 73 Pa. Cons. Stat. §2241 et. seq. ............... 11-15, 20

## Rules

Fed. R. Civ. P. 12(b)(6)..................................................................................................... 1,3

Defendants CMI Marketing Research, Inc. and Carol McMahon ("Defendants"), by their attorneys Hill, Betts and Nash and Deasey, Mahoney & Valentini, Ltd., submit this Memorandum in Support of their Motion pursuant to FRCP 12b(6) to dismiss Plaintiff's complaint for failure to state a claim.

## FACTS

Plaintiff alleges in his Complaint that he has two telephone numbers that have been on the National Do Not Call Registry consistently since 2005 and 2018, respectively, and on the Pennsylvania Do Not Call Registry "for over a year" as of November 22, 2022 (¶¶30-31); that the numbers are used for residential purposes, not associated with a business, and assigned to a Voice over Internet Protocol (VOIP) service for which he is charged per call (¶¶32-37); that one of his numbers was called five times from lines belonging to Defendants: twice on December 20, 2021, and three times on December 21, 2021; (¶¶38-42); and that his other number was called nine months later, on September 12, 2022, from a line belonging to Defendants. (¶43).

Plaintiff further alleges that for two of the calls, the first and the last, he answered the call but hung up after a human, ***non-prerecorded voice***, identified him/herself as calling from "CMI Research" (¶¶38, 43). Apparently, Plaintiff called back each number from which he was called and heard an identical, prerecorded message that stated:

> "You have reached CMI Research. We are strictly a political survey company and are not attempting to sell you anything. However, if you wish to be removed from our call list, please leave your name and number. Thank you. Please leave your message after the tone. When done, hang up or press the pound key."

(¶¶44-45).

Despite his apparent indignation at receiving the calls, Plaintiff does not allege that at any time he left a message asking to be removed from Defendants' call list.

This is the sum total of the "facts" about which Plaintiff has knowledge. The rest of his Complaint is a house of cards in which he infers, based on his supposed recognition of what he calls the "Voice of Asterisk" (though he fails to describe how he recognizes the voice) on part of Defendants' message when making a ***return call*** to Defendants' numbers, that Defendants employ Asterisk software that "supports ATDS capabilities;" and that Defendants must have used this software in violation of the Telephone Consumer Protection Act's ("TCPA's") ATDS prohibition because "…Defendants admit they sent calls from a list. It would be illogical to manually call individuals using data obtained from a computerized list, when the computerized list itself could be used to call recipients sequentially from a list using an ATDS." (¶53). Plaintiff has not stated facts sufficient to support a claim for violation of the TCPA's prohibition against calling with an ATDS.

Further, despite the fact that Plaintiff hung up on the calls that he answered (without Defendants attempting to sell him anything), and heard a message, when calling Defendants' numbers, stating both that "we are strictly a political survey company and are not attempting to sell you anything" and inviting him to leave his name and number to be removed from Defendants' call list (which he did not do) he has made the logical leap to accuse Defendants of a "phishing scam" where they are secretly telemarketers seeking to sell him goods and services— based on absolutely nothing but his imagination (¶¶19-21; 38-43;44-45). Plaintiff has not stated facts sufficient to support his claim of violation of the Pennsylvania Telemarketer Registration Act (PTRA) or the implementing regulations codified in 47 CFR §64.1200(c) and (d), all of which require Defendants' calls to be made for the purpose of selling him goods and services.[1]

---

[1] Plaintiff's claims fail for additional reasons as detailed herein, e.g. the PTRA provides no private right of action.

## STANDARD OF REVIEW

A party may move to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). When reviewing such a motion, the Court is "required to accept as true all allegations in the complaint and all reasonable inferences that can be drawn from [the allegations] after construing them in the light most favorable to the non-movant." *Conard v. Pa. State Police, 902 F.3d 178, 182* (3d Cir. 2018) *(alteration in original)* (quoting *Jordan v. Fox, Rothschild, O'Brien & Frank*el, 20 F.3d 1250, 1261 (3d Cir. 1994)).

A complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "[A] formulaic recitation of the elements of a cause of action will not do." Id. (citing *Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed) The Court must be able to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (citing *Twombly*, 550 U.S. at 556)). It is insufficient for "a complaint [to] plead[] facts that are 'merely consistent with' a defendant's liability" because the stated ground for relief must be "plausible" and not just "possible." Id. (quoting *Twombly*, 550 U.S. at 557)). The Court need not accept "mere conclusory statements," or "legal conclusions couched as a factual allegation." *Brown v. Daikin Am. Inc.*, 756 F.3d 219, 225 (2d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555)).

## POINT I

## PLAINTIFF HAS FAILED TO STATE A CLAIM UNDER COUNT I ALLEGING VIOLATION OF THE TCPA'S PROHIBITION AGAINST CALLING WITH AN ATDS

Plaintiff's Count I alleges that Defendants called his numbers without his prior express consent using an automatic telephone dialing system ("ATDS") in violation of section 227(b)(1)(A)(iii) of the TCPA, which states:

**b) Restrictions on use of automated telephone equipment.**
**(1)** Prohibitions. It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—
**(A)** to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice—
**(iii)** to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call, unless such call is made solely to collect a debt owed to or guaranteed by the United States.

Plaintiff seeks $500 in damages for each call, treble damages for "willful and knowing" violations, and injunctive relief preventing defendants from making calls using an ATDS or a prerecorded voice(¶¶ 67-70; relief page).[2]

The TCPA defines an ATDS as a piece of equipment with the capacity "to store or produce telephone numbers to be called, using a random or sequential number generator" and "to dial such numbers." 47 U.S.C. § 227(a)(1). In *Facebook, Inc. v. Duguid*, 141 S. Ct. 1163, 209 L. Ed. 2d 272 (2021), the Supreme Court considered whether the statute's definition "encompasses equipment that can 'store' and dial telephone numbers, even if the device does not 'us[e] a

---

[2] Plaintiff's ¶70 specifically seeks injunctive relief prohibiting Defendants from "making calls or sending messages, except for emergency purposes, to any number using an artificial or prerecorded voice in the future" and Plaintiff's relief page seeks injunctive relief "prohibiting defendants from calling telephone numbers using an artificial or prerecorded voice and/or ATDS." As there are no allegations that Defendants called Plaintiff using an artificial or prerecorded voice this claim for relief also must be dismissed.

random or sequential number generator.'" Id. at 1167 (alteration in original) (quoting 47 U.S.C.

§ 227(a)(1)); *Camunas v. Nat'l Republican Senatorial Comm*., 541 F. Supp. 3d 595, 602 (E.D.Pa.

2021). In *Duguid*, the plaintiff alleged that because Facebook's system had the capacity to store

and dial telephone numbers, it was an ATDS within the meaning of the statute even though the

system did not use a random or sequential number generator. Id. at 1171. The Supreme Court

disagreed, concluding that the clause "using a random or sequential number generator" in the

statute "modifies both 'store' and 'produce.'" Id. at 1173. Therefore, to qualify as an ATDS, "a

device must have the capacity either to store a telephone number using a random or sequential

generator or to produce a telephone number using a random or sequential number generator." Id.

at 1167. Because Facebook's system did neither, it was not an ATDS. Id. at 1169; *Camunas,* Id.

In *Panzarella v. Navient Sols., Inc*., 37 F.4th 867 (3d Cir. 2022), the Third Circuit

clarified that, in order to prove a violation of TCPA section 227(b)(1)(A)(iii), the equipment at

issue must both *qualify* as an ATDS, and its ATDS functions must actually have been *used* to

call a plaintiff: i.e., the defendants' calling equipment must actually: 1) have used a random or

sequential generator to store or produce Plaintiff's telephone numbers, and 2) dialed Plaintiff's

numbers. The Court stated:

> Despite the text's lack of clarity, Section 227(b)(1)(A)'s context and legislative history
> establish that Congress drafted this statute to prohibit making calls that use an ATDS's
> autodialing functionalities.

> This construction leaves us with another question to resolve: what does it mean to make a
> call using an ATDS's autodialing functionalities? Here, the TCPA's definition of an
> ATDS proves illuminating. It shows that, at its core, autodialing is the "product[ion] or
> stor[age] of telephone numbers to be dialed, using a random or sequential number
> generator." § 227(a)(1). After all, without the capacity to perform one of these functions,
> a dialing system cannot qualify as an ATDS. *Id.* We already reached this conclusion
> implicitly in *Dominguez* when we explained that the TCPA defined an ATDS based on its
> "present capacity to *function as an autodialer by generating random or sequential*
> *telephone numbers* and [to] dial[] those numbers." 894 F.3d at 121 (emphasis added); *see*
> *also ACA Int'l*, 885 F.3d at 696, 704 (describing these same capabilities as "autodialer

features" and "autodialer functions"). More recently, in *Duguid*, the Supreme Court determined that an ATDS's defining feature was its ability to employ random or sequential number generation to produce or store telephone numbers. 141 S. Ct. at 1170-71. Therefore, to use an ATDS as an autodialer, one must *use* its defining feature—its ability to produce or store telephone numbers through random-or sequential-number generation.

What is more, when we interpret "making any call . . . using any [ATDS]" to mean *making any call using any ATDS's ability to use a random or sequential number generator to produce or store telephone numbers*, § 227(b)(1)(A), we give effect to both the TCPA's definition of an ATDS and its targeted prohibitions….
A broad definition of an ATDS based on a dialing system's "capacity" ensured that telemarketers could not evade all TCPA scrutiny at the outset through arguments about how their precise systems operate. The narrow prohibitions balanced the definition's breadth, imposing liability only when those telemarketers used their dialing systems to cause the harms the TCPA sought to eliminate.

A simple hypothetical illustrates how sections 227(a)(1) and 227(b)(1)(A) work together. Imagine Junk Call Corp. employs a dialing system with a switch that allows Junk Call to make calls in one of two modes: "automatic," in which the system dials random or sequential telephone numbers, and "list," in which the system dials the telephone numbers imported from Junk Call's customer list. This dialing system qualifies as an ATDS because it has the present capacity to produce random telephone numbers and then dial them. *See Dominguez*, 894 F.3d at 119-20, 120 n.23. A broad construction of "using any [ATDS]" (i.e., section 227(b)(1)(A) prohibits any call made with the assistance of an ATDS) would mean that Junk Call would violate the TCPA when it conducts calling campaigns in either automatic mode or list mode. Under the narrower construction (i.e., section 227(b)(1)(A) proscribes calls that employ an ATDS's capacity to generate random or sequential numbers), Junk Call's automatic-mode calls alone would give rise to TCPA liability.

***Only the latter reading gives effect to Congress's intent in enacting the TCPA. Because Junk Call dials random or sequential numbers only when it employs automatic mode, automatic-mode calls, but not list-mode calls, threaten the harm the TCPA targets— telemarketing "that risks dialing emergency lines randomly or tying up all the sequentially numbered lines at a single entity." Duguid, 141 S. Ct. at 1171. Congress would have little reason to expose Junk Call to liability for its list-mode calls as these calls do not present these risks. If we interpreted section 227(b)(1)(A) to proscribe calls where an ATDS has not used its number-generation capabilities, then we "would take a chainsaw to the[] nuanced problems" Congress intended to remedy. Id. Heeding the Supreme Court's advice, we read section 227(b)(1)(A) to protect Americans from a particular type of harm as Congress intended (and drafted). See id. Thus, we hold that, for a call to violate section 227(b)(1)(A), that call must employ either an ATDS's capacity to use a random or sequential number generator to produce telephone numbers to be dialed or its capacity to use a random or sequential number generator to store telephone numbers to be dialed.***

Id at 879-881 (emphasis added). Because defendants in *Panzarella* did not rely on random or sequential computer number generation when they called the plaintiffs, but on lists that defendants had input into their system, there was no violation of the statute. Id at 882.

Plaintiff either misconstrues or intentionally misrepresents the *Panzarella* decision when he states, in ¶52 of his Complaint, that "[t]he Third Circuit held that, in passing the TCPA's ATDS prohibition, Congress intended to remedy the problems caused by using computer software to dial numbers randomly or sequentially from a list or database." Instead, the Third Circuit held that a violation of the TCPA's ATDS prohibition only occurred when the **numbers themselves were stored or produced** using a random or sequential number generator, and that specific functionality was actually used to call the plaintiff. Plaintiff's allegation in ¶53 that "Defendants admit they sent calls from a list" and that "the list itself could be used to call numbers sequentially" defeats his own claim, and presents the same situation the Third Circuit (and the Supreme Court) held not to violate the TCPA's ATDS prohibition: a calling system that dials numbers imported from a list.

See *Deleo v. Nat'l Republican Senatorial Comm*., 2021 U.S. Dist. LEXIS 210858, *18-20, 2021 WL 5083831 (D.N.J. November 1, 2021) ( "alleging the defendant used a system that automatically dials phone numbers from a stored list does not meet the definition of an ATDS under the TCPA as contemplated by Congress" and Plaintiff's allegation in his Complaint that Defendant "uses dialing technology, which calls phone numbers from a stored list using a random or sequential number generator to select those phone numbers" did not state a claim because "a stored list" was "the exact characterization of an ATDS that the Supreme Court rejected in *Duguid*" ); *Camunas v. Nat'l Republican Senatorial Comm*., 570 F. Supp. 3d 288, 295 (E.D.Pa. 2021) ("from the face of [plaintiff's] complaint, [plaintiff's] theory is that [plaintiff's]

number was previously stored in NRSC's system... Thus, [plaintiff] does not allege that a random or sequential number generator produced or stored numbers, but instead alleges that the phone numbers were already stored on the device prior to the messages being sent. This is precisely the type of allegation rejected by the Supreme Court in Facebook.")

While Plaintiff's allegation in his Complaint that Defendants called him from a stored list is enough to defeat his claim that an ATDS was used to call him, he also fails to allege facts permitting an inference that an ATDS was used. A plaintiff must provide details regarding the content of the messages or calls that render the claim that an ATDS was used more plausible. *Camunas v. Nat'l Republican Senatorial Comm.*, 541 F. Supp. 3d 595, 602 (E.D. Pa. 2021); *Smith v. Pro Custom Solar LLC*, 2021 U.S. Dist. LEXIS 8616, *5, 2021 WL 141336 (D.N.J. Jan 25, 2021); *Montinola v. Synchrony Bank*, 2018 U.S. Dist. LEXIS 146716, 2018 WL 4110940, at *2 (D.N.J. Aug. 28, 2018). The inference that an ATDS was used in a phone call can come from allegations like: (1) a noticeable pause or delay before hearing the message, *Smith v. Direct Bldg. Supplies, LLC*, 2021 U.S. Dist. LEXIS 193657, 2021 WL 4623275 (E.D.Pa. October 7, 2021); *Hazan v. Wells Fargo & Co.*, 2019 U.S. Dist. LEXIS 72748, 2019 WL 1923272, at *3 (D.N.J. Apr. 30, 2019); (2) calls ending with a beep, 2019 U.S. Dist. LEXIS 72748, [WL] at *2, (3) instructions to call a 1-800 number, *Todd v. Citibank*, 2017 U.S. Dist. LEXIS 63402, 2017 WL 1502796, at *6 (D.N.J. Apr. 26, 2017); (4) an unusual phone number or short code instead, *Douek v. Bank of Am. Corp.*, Civ. 2017 U.S. Dist. LEXIS 141785, 2017 WL 3835700, at *2 (D.N.J. Sept. 1, 2017); and (5) a robotic voice on the other end, *Montinola*, Id. at *3. Although these facts are not independent legal requirements, they may help the pleader cross the plausibility line. *Montinola*, Id. at *3. See *Smith v. Pro Custom, Id*. at *5.

Plaintiff has alleged none of these facts. Instead, he alleged that the two calls he answered were met (with no pause or delay) by a human voice, after which he hung up, and that he did not answer the other four calls. Complaint ¶¶ 38-43.

Moreover, the fact that Plaintiff received five calls over two days and a sixth call nine months later does not imply ATDS use. Courts have held that far higher call frequencies were insufficient to raise an inference of ATDS use. *Hazan*, Id. at *3 (1400 calls over two years); *Montinola*, Id. at *3 (133 calls over a "short period of time"). See *Smith v. Pro Custom Solar LLC*, Id. at *6.

Plaintiff has not alleged facts sufficient to permit an inference that an ATDS was used**,** and has alleged facts that preclude such a possibility. He has failed to state a claim for violation of the TCPA's prohibition against calling with an ATDS, and this claim must be dismissed.


**POINT II**

**PLAINTIFF HAS FAILED TO STATE A CLAIM UNDER COUNT II
ALLEGING VIOLATION OF THE PENNSYLVANIA TELEMARKETER
REGISTRATION ACT, 73 PA. CONS. STAT. § 2241**

The second count of Plaintiff's Complaint alleges that Defendants have violated the Pennsylvania Telemarketer Registration Act, 73 Pa. Cons. Stat. § 2241 et. seq. ("PTRA"), "by placing at least six telemarketing calls to the Plaintiff without registering as telemarketers under Pennsylvania law" in violation of 73 Pa. Cons. Stat. § 2243 and by "failing to identify themselves in the messages" in violation of 73 Pa. Cons. Stat. § 2245.1 (¶ 71 of Complaint). Plaintiff also appears to allege that Defendants violated the PTRA "by making calls to Plaintiff's number, on the Pennsylvania Do-Not-Call Registry, without registration." (¶73). Plaintiff alleges

that he is entitled to $300 per call pursuant to 73 Pa. Cons. Stat. 2246(a), as well as injunctive

relief.  (¶¶ 74 and 75).

Plaintiff cannot state a claim for violation of the PTRA because that statute provides him

with no private right of action. As the Court stated in *Shelton v. FCS Capital LLC*, 2019 U.S.

Dist. LEXIS 213179, *7-8, 2019 WL 6726404 (E.D.Pa. December 11, 2019):

> The PTRA vests enforcement authority with Pennsylvania's Attorney General, not
> individual consumers. *See* 73 P.S. § 2245.2(k)(1). "[W]here the General Assembly
> commits the enforcement of a regulatory statute to a government body or official, this
> precludes enforcement by private individuals." *Lerro ex rel. Lerro v. Upper Darby Twp.*,
> 798 A.2d 817, 822 (Pa. Commw. Ct. 2002) (citations omitted); *see also Cty. of Butler v.
> CenturyLink Commc'ns, LLC*, 207 A.3d 838, 852 (Pa. 2019) (no private right of action to
> enforce statute where Legislature "provided sufficient indicia evincing its intention to
> centralize enforcement authority in the relevant state agency"). Here, the PTRA's
> language demonstrates the General Assembly's intent to commit enforcement of the
> PTRA to the Attorney General. Shelton therefore cannot maintain such a claim as a
> matter of law.
>
> In his Motion, Shelton also references the Pennsylvania Unfair Trade Practices and
> Consumer Protection Law ("UTPCPL"). (ECF No. 41 at 11.) Shelton has not asserted a
> claim under that statute. (ECF No. 7.)  It therefore cannot provide a basis for liability. In
> any event, the UTPCPL only creates a private right of action for persons who "purchase[]
> or lease[] goods or services primarily for personal, family or household purposes and
> thereby suffers any ascertainable loss of money or property" as a result of a defendant's
> violation of the UTPCPL. 73 P.S. § 201-9.2(a). Shelton has not put forth any evidence
> that he purchased or leased goods or services from FCS or that he suffered any
> ascertainable loss of money or property.

Plaintiff, likewise, has referenced the UTPCPL, but has neither asserted a claim under that

statute nor averred any facts which would entitle him to recover under it (i.e. that he purchased

or leased goods from defendants and thereby suffered an ascertainable loss of money or

property). Accord*, Perrong v. MLA Int'l, Inx.*, 2022 U.S. Dist. LEXIS 36759, **13-14, 2022 WL

1238603 (M.D.Fl. March 2, 2022).

Furthermore, Plaintiff cannot state a claim against defendants for violation of ***any*** part of

the PTRA, which applies only to "telemarketers." "Telemarketing" is defined by the PTRA as:

10

> A plan, program or campaign which is conducted to induce the purchase of goods or services or to solicit contributions for any charitable purpose, charitable promotion or for or on behalf of any charitable organization, by use of one or more telephones and which involves more than one telephone call…. (§2242)

and a "telemarketer" is defined as:

> Any person or business which, in connection with telemarketing, initiates or receives telephone calls to or from a consumer in this Commonwealth, or when the person or business acting in connection with telemarketing is located within this Commonwealth when such calls are initiated or received….(§2242).

Plaintiff has not alleged facts demonstrating that any calls he received from defendants were "conducted to induce the purchases of goods or services or to solicit contributions for any charitable purpose, charitable promotion or for or on behalf of any charitable organization," and indeed that was not their purpose.

Moreover, Plaintiff cannot state a claim for violation of § 2243 of the PTRA, the "Registration Requirement." That section requires a "telemarketer" or "telemarketing business" to register with the Office of Attorney General "at least 30 days prior to offering for sale consumer goods or services through any medium"( § 2243(a), "General Rule"), and states that "[i]t shall be unlawful for any telemarketer to initiate a telephone call to or receive a telephone call from a consumer in connection with the purchase of consumer goods or services unless the telemarketer or the telemarketing business which employs the telemarketer is registered with the Office of Attorney General.") (§ 2243(b), "Unlawful Conduct."). "Consumer goods or services" are defined as "Real or personal property or services used for personal, family or household purposes." (§ 2242, Definitions.)

Plaintiff has not alleged that defendants called him in connection with the purchase of consumer goods and services (and defendants do not in fact offer or sell consumer goods and services), which is fatal to Plaintiff's claim under this subsection.[3]

Nor can Plaintiff prove a violation of § 2245.1 of the PTRA, "Blocking of caller identification and other telemarketing screening products or services prohibited," which states:

> No telemarketer shall take any action with the primary intent:
>
> 1. to prevent the transmission of a telemarketer's name or telephone number to any recipient of a telephone solicitation call when the equipment or service used by the telemarketer is capable of creating and transmitting the telemarketer's name or telephone number; or
>
> 2. to circumvent, bypass or disable any product or service used by the residential telephone subscriber to screen telephone calls.

Plaintiff has not alleged that defendants blocked their names or telephone numbers, or used any device to prevent plaintiff or any recipient from screening defendants' calls—which clearly is the behavior prohibited by this subsection. Indeed, defendants could not have violated this subsection, as plaintiff was able to see their numbers and call them back.

To the extent that Plaintiff is alleging a violation of the PTRA based on the fact that his phone numbers allegedly were on the Pennsylvania Do-Not-Call list, he likewise fails to state a claim. PTRA §2245.2(a) provides in pertinent part that:

> General rule. -- No telemarketer shall initiate or cause to be initiated a telephone solicitation call to a residential telephone number of a residential telephone subscriber who does not wish to receive telephone solicitation calls and has caused his name, address and telephone number to be enrolled on a do-not-call- list maintained by the list administrator.

---

[3] The registration requirement in §2243, moreover, contains no fewer than 12 exceptions: i.e. persons engaged in "telemarketing" as defined by the act who nevertheless are not required to register with the State of Pennsylvania. See definition of "telemarketer" in §2242.

As explained above, defendants are not "telemarketers" under the PTRA, and Plaintiff has not

adequately alleged that they are; furthermore, they made no "telephone solicitation calls" to

Plaintiff, which are defined under the PTRA as calls:

> "…made to a residential or wireless telephone subscriber for the purpose of soliciting the
> sale of any consumer goods or services or for the purpose of obtaining information that
> will or may be used for the direct solicitation of a sale of consumer goods or services or
> an extension of credit for that purpose,"

and which explicitly exclude calls made "on behalf of a political candidate or political party."

(§ 2242, Definitions.)

## POINT III

**PLAINTIFF HAS FAILED TO STATE A CLAIM UNDER COUNT III
ALLEGING VIOLATION OF THE TCPA'S IMPLEMENTING REGULATIONS
CODIFIED IN 47 CFR § 64.1200**

Plaintiff's Count III alleges that Defendants breached 47 USC §227(c)(5) by violating the

implementing regulations codified in 47 CFR §64.1200(c) and (d). Plaintiff alleges that he

received six calls from Defendants that constituted 18 violations: six violations of 47 CFR

§64.1200(c) (calling Plaintiff, whose number is on the National and Pennsylvania Do Not Call

registry); six violations of CFR §64.1200(d)(1) (calling Plaintiff without having a written Do Not

Call policy in place); and six violations of CFR §64.1200(d)(6) (calling Plaintiff without

maintaining him on Defendants' internal Do Not Call list). Plaintiff also seeks treble damages for

"knowing and willful" violations and injunctive relief.

This Court has held that Mr. Perrong's "novel legal theory" that he may sue for violations

of 47 CFR §64.1200(d)(1) and (d)(6)[4] without first specifically asking Defendants not to call him

---

[4] Those sections state in pertinent part:

**(d)** No person or entity shall initiate any artificial or prerecorded-voice telephone call pursuant to
an exemption under paragraphs (a)(3)(ii) through (v) of this section or any call for telemarketing

has "no legs" and that he is without standing to sue for such violations. In *Perrong v. South Bay Energy Corp.,* 2021 U.S. Dist. LEXIS 70715, *4-8, 2021 WL 1387506 (E.D.Pa. April 13, 2021), where Plaintiff sought to amend his Complaint to allege that defendants therein violated provisions of 47 CFR § 64.1200(d), although he had not asked defendants not to call him, this Court held:

> Count II of Mr. Perrong's proposed amended complaint implicates the causation element, *i.e.* whether his injury "is fairly traceable to the challenged conduct" of Defendants. *Id.* (quotation omitted). "[T]he traceability element is "akin to 'but for' causation in tort.'" *Id.* (same). "In assessing whether the defendant's particular conduct caused the plaintiff's injury, the variable to isolate and change is the conduct of the defendant the plaintiff challenges." *Id.* at 286. Thus, employing this framework, the Court must ask: Had Defendants' conduct that Mr. Perrong challenges not occurred, would he have suffered an injury? If he would have, then the challenged conduct did not actually cause Mr. Perrong's injury; if not, then it did. *See id.* at 285. In Count II of the proposed amended complaint, the challenged conduct is Defendants' alleged failure to have a written policy for maintaining a do-not-call list, as required by 47 C.F.R. § 64.1200(d)(1). Mr. Perrong's injury does not come from Defendants' alleged violation of Section 64.1200(d)(1). That provision requires a company to maintain an internal list of subscribers who requested that the company not call them:
>
> > No person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls **made by or on behalf of that person or entity**. 47 C.F.R. § 64.1200(d) (emphasis added).

---

purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive such calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

**(1)** Written policy. Persons or entities making artificial or prerecorded-voice telephone calls pursuant to an exemption under paragraphs (a)(3)(ii) through (v) of this section or calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.
***
**(6)** Maintenance of do-not-call lists. A person or entity making artificial or prerecorded-voice telephone calls pursuant to an exemption under paragraphs (a)(3)(ii) through (v) of this section or any call for telemarketing purposes must maintain a record of a consumer's request not to receive further calls. A do-not-call request must be honored for 5 years from the time the request is made.

That provision applies only to individuals who have directed a company not to call them. Mr. Perrong never directed South Bay, Webman's World, or Mr. Webman not to call him. That is because Mr. Perrong did not satisfy the "regulatory prerequisite" before he could bring a claim under Section 64.1200(d)(1). *Drake v. FirstKey Homes, LLC*, 439 F. Supp. 3d 1313, 1325 (N.D. Ga. 2020). Even if one or more Defendants had maintained an internal do-not-call list, that compliance would not have prevented them from calling Mr. Perrong.

Mr. Perrong tries to avoid this conclusion by suggesting that Section 64.1200(d)(1) requires companies to maintain an internal policy to avoid calling anyone on the national DNC List, but the regulatory language does not support his interpretation. No party has directed the Court to any official FCC interpretation of Section 64.1200. The Court therefore turns to traditional canons of statutory interpretation. *See Green v. Brennan*, 136 S. Ct. 1769, 1776, 195 L. Ed. 2d 44 (2016); *McCann v. Unum Provident*, 907 F.3d 130, 144 (3d Cir. 2018) ("[T]he basic tenets of statutory construction hold true for the interpretation of a regulation.") (quotation omitted).

"It is the cardinal canon of statutory interpretation that a court must begin with the statutory language." *In re Philadelphia Newspapers, LLC*, 599 F.3d 298, 304 (3d Cir. 2010), *as amended* (May 7, 2010). "When the words of a statute are unambiguous, then, this first canon is also the last: 'judicial inquiry is complete.'" *Id.* (quoting *Connecticut Nat. Bank v. Germain*, 503 U.S. 249, 254, 112 S. Ct. 1146, 117 L. Ed. 2d 391 (1992)); *see also Idahoan Fresh v. Advantage Produce, Inc.*, 157 F.3d 197, 202 (3d Cir. 1998 ("Where the statutory language is plain an unambiguous, further inquiry is not required…"). To determine whether statutory language is ambiguous, the Court must "read the statute in its ordinary and natural sense." *Id.* (quotation omitted).

Section 64.1200 is not ambiguous. The language "not to receive telemarking calls made by or on behalf of that person or entity" refers back to the "person or entity" that "initiate[s]" a call. Thus, the provision applies to calls that a company might make to a list of people that have directed the company not to call them. The regulation contemplates a specific list, which is different from (but might overlap with) the national DNC List.

The regulation's structure confirms this interpretation. Section 64.1200(d) prohibits a company from calling individuals who have directed the company not to call them. Section 64.1200(c)(2) prohibits calls to individuals on the national DNC List, with certain limited exceptions. If Section 64.1200(d) applied to every individual on the national DNC List, it would render Section 64.1200(c)(2) superfluous, or at least "insignificant." *United States v. Cooper*, 396 F.3d 308, 312 (3d Cir. 2005).

Mr. Perrong might be right that Defendants violated the TCPA if they failed to maintain a list of individuals who directed South Bay not to call them. But Mr. Perrong never asked to be on such a list, so its non-existence did not cause his injury. "In other words, a caller

could only violate the regulation if it called someone who had asked to be put on the list." *Drake*, 439 F. Supp. 3d at 1324. Put another way, even if Defendants had complied with the TCPA and maintained an internal do-not-call list, their compliance would not have prevented a call to Mr. Perrong because he would not have been on that list. Instead, Mr. Perrong's injury traces to the violation of a different provision, Section 64.1200(c)(2).

*Perrong v. South Bay Energy Corp.*, 2021 U.S. Dist. LEXIS 70715, *4-8, 2021 WL 1387506

(E.D.PA April 13, 2021).

Here, as in *South Bay Energy Corp.,* Plaintiff never requested (and does not allege that he requested) that these specific defendants not call him and never requested these defendants to add him to their internal Do Not Call list. Any failure on Defendants' part to have a written Do Not Call policy or to maintain its internal Do Not Call list, therefore, could not have resulted in harm to Plaintiff, and he has failed to state a claim under  47 CFR §64.1200(d).

Moreover, 47 CFR §64.1200(d) applies only to "artificial or prerecorded-voice telephone call[s]" and "call[s] for telemarketing purposes to [] residential telephone subscriber[s]. See 47 CFR §64.1200(d). Plaintiff does not allege that Defendants made calls to him with an artificial or pre-recorded telephone voice. Nor does he allege facts sufficient to support that the calls made to him were "telemarketing" calls. "Telemarketing" is defined in 47 CFR §64.1200(13)  as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person."

As for Plaintiff's claim that Defendants violated 47 CFR §64.1200**(c)** by calling him although he was on the national Do Not Call registry, that regulation applies only to "telephone solicitations." 47 CFR §64.1200(15) states:

The term telephone solicitation means the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person, but such term does not include a call or message:
(i) To any person with that person's prior express invitation or permission;

16

(ii) To any person with whom the caller has an established business relationship; or
(iii) By or on behalf of a tax-exempt nonprofit organization.

As explained above, Plaintiff does not allege facts sufficient to support that the calls made to him constituted "telephone solicitations" and he cannot state a claim for violation of 47 CFR §64.1200(c). By Plaintiff's own admission, he never even listened to Defendant's calls; he does not allege anywhere the content of these calls that might qualify them as "telephone solicitations;" and Defendants' messages advised him that they were a "political survey company" "not attempting to sell [him] anything." Complaint, ¶¶ 38-44. In *Camunas v. Nat'l Republican Senatorial Comm.*, 570 F. Supp. 3d 288, 299 (E.D.Pa. 2021) the Court cited to the legislative history of the TCPA, wherein the House Committee on Energy and Commerce's report explained that "[t]o come within the definition [of telephone solicitation], a caller must encourage a commercial transaction" and the Committee "does not intend the term 'telephone solicitation' to include public opinion polling, consumer or market surveys, or other survey research conducted by telephone."[5] Plaintiff has alleged no facts demonstrating that Defendants were engaged in anything other than political research polling.

Plaintiff has failed to state a claim for violating the implementing regulations codified in 47 CFR §64.1200(c) and (d) and this claim, like his others, must be dismissed.

---

[5] The Court in *Camunas* further held that neither calls conveying general political messages nor requesting donations to a political party constituted "telephone solicitations" under 47 CFR §64.1200(c) and 47 U.S.C. §227 (b)(4) and such calls to a person on the National Do Not Call registry did not constitute a violation of the TCPA.

## <u>CONCLUSION</u>

Based on the foregoing, Plaintiff has failed to state a claim on which relief can be granted on any of his claims, and cannot state such a claim. Defendants respectfully request that this Court dismiss Plaintiff's Complaint in its entirety, with prejudice.

Dated: February 27, 2023
      New York, New York

*/s/ Elizabeth A. McCoy*
Elizabeth A. McCoy (EAM -8448)
(*Admitted Pro Hac Vice*)
*Attorneys for Defendants*
HILL, BETTS & NASH LLP
14 Wall Street, Suite 5H
New York, New York 10005
(212) 839-7000

George Zacharkow, Esq.
Deasey, Mahoney & Valentini, Ltd.
1601 Market Street, Suite 3400
Philadelphia, PA 19103
(215) 587-9400

<u>**Certification in Accordance with Judge Murphy's Individual Rule 5**</u>

The parties met and conferred in the substance of the motion on February 23, 2023 and submit the following statements as to whether discovery should proceed while the Rule 12 motion is pending.


Plaintiff's position is that such discovery should proceed while the motion is pending. He states:

"I believe that I have adequately pled a cause of action for the first count with respect to an ATDS. Consistent with the *Facebook* and *Panzarella* decisions, such allegations are sufficient to support a claim on its face and are more appropriate to summary judgment, particularly after an expert has examined the technical minutiae of the system(s) used to place the calls. Accordingly, discovery should proceed as to this claim.

Second, there is a private right of action under the Telemarketer Registration Act. *Bower v. Nat'l Admin. Serv. Co., LLC*, No. 4:21-CV-00998, 2022 WL 821166, at *2 (M.D. Pa. Mar. 17, 2022). As there is a conflict between the district courts on this issue, I likewise believe that this issue should proceed to discovery.

Finally, the complaint alleges sufficient facts, taken as true, to support the inference that your clients are telemarketers and the calls constituted telephone solicitations for TCPA purposes as alleged in count three of the complaint. As such, any allegations as to the nature of your clients' business operations and telephone calls are more appropriate for summary judgment after discovery into the same."


Defendants' position is that discovery should not proceed while the motion is pending. As outlined in the memorandum, Plaintiff has failed to state a claim on any ground, and resolution of the motion will fully resolve the case. The case is not unduly complex, and resolving it on motion will save time wasted in discovery.

Plaintiff's Count I does not set forth facts sufficient to state a claim for violation of the TCPA's prohibition against calling with an ATDS under *Facebook*, *Panzarella*, and other relevant authority, and Plaintiff should not be rewarded with the ability to put defendants through needless discovery based on his threadbare allegations.

The same is true for Plaintiff's Counts II and III, in which Plaintiff alleges that Defendants are "telemarketers" or alternatively made "telephone solicitations" although he has stated no support whatsoever for such claims and every fact he cites in his complaint indicates the contrary. Further, as stated in Defendants' motion (Point II). Plaintiff has no private right of action under the PTRA, and no discovery is necessary to resolve this legal issue.

## CERTIFICATE OF SERVICE

I, ELIZABETH McCOY, certify that on the 27th day of February 2023, I served copies of 1) DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR FAILURE TO STATE A CLAIM, 2) MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION PURSUANT TO FRCP 12b(6) TO DISMISS PLAINTIFF'S COMPLAINT and 3) PROPOSED ORDER DISMISSING PLAINTIFF'S COMPLAINT WITH PREJUDICE upon:

> **ANDREW R. PERRONG**
> 1657 THE FAIRWAY #131
> JENKINTOWN, PA 19046
> 215-791-6957
> Email: andyperrong@gmail.com
> ***PRO SE***

by depositing a true copy of the papers, enclosed in a post-paid wrapper, in an official depository under the exclusive care and custody of the U.S. Postal Service, and by filing electronically by operation of the Court's electronic filing system.

> HILL BETTS & NASH LLP
>
> */s/ Elizabeth A. McCoy*
> Elizabeth A. McCoy