**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

---

ANDREW R. PERRONG
1657 THE FAIRWAY #131
JENKINTOWN, PA 19046

       Plaintiff

vs.

CMI MARKETING RESEARCH, INC.
10712 COUNTY LINE ROAD, UNITS 6 & 7
HUDSON, FL 34667

and

CAROL MCMAHON
AKA CAROL O'NEILL
135 CASE RD.
CUTCHOGUE, NY 11935

      Defendants.

Case No. 2:22-cv-03733-JFM

JURY TRIAL DEMANDED

**PLAINTIFF'S REPONSE IN OPPOSITION
TO DEFENDANTS' MOTION TO DISMISS**

1

## TABLE OF CONTENTS

TABLE OF CONTENTS .......................................................................................................... 2

TABLE OF AUTHORITIES ................................................................................................... 2

INTRODUCTION ................................................................................................................... 3

FACTUAL BACKGROUND ................................................................................................. 4

LEGAL STANDARD ............................................................................................................ 5

LAW AND ARGUMENT ...................................................................................................... 5

    A.    Plaintiff has alleged sufficient facts, accepted as true, to support a finding that Defendants used an ATDS to contact the Plaintiff. ................................................... 5

    B.    There exists a private right of action for violations of the PTRA. ................................ 11

    C.    Plaintiff sufficiently alleges the calls were telemarketing and has therefore pled a claim for relief under the PTRA and TCPA's section C. .................................................. 13

        1.    Defendants are "telemarketers" under the plain meaning of the PTRA. .................... 13

        2.    The calls were placed for "telemarketing purposes" under the TCPA. Defendants should not stand to benefit from their own misconduct and misrepresentations. ................. 15

CONCLUSION ...................................................................................................................... 18

CERTIFICATE OF SERVICE ............................................................................................. 18

## TABLE OF AUTHORITIES

**Cases**

*Anthony v. Pro Custom Solar, LLC*, No. EDCV2001968JAKKKX, 2022 WL 17886032 (C.D. Cal. Nov. 14, 2022) ........................................................................................................ 9

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ...................................................................... 5

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .............................................................. 5

*Bower v. Nat'l Admin. Serv. Co., LLC*, No. 4:21-CV-00998, 2022 WL 821166, (M.D. Pa. Mar. 17, 2022) ............................................................................................................. 12, 13

*Brickman v. United States*, 56 F.4th 688 (9th Cir. 2022) ................................................... 8

*Camunas v. Nat'l Republican Senatorial Comm.*, 541 F. Supp. 3d 595 (E.D. Pa. 2021) ............... 6

*Comprehensive Health Care Sys. of the Palm Beaches, Inc. v. M3 USA Corp.*, 232 F. Supp. 3d 1239 (S.D. Fla. 2017) ............................................................................................... 16

*Drug Reform Coordination Network, Inc. v. Grey House Publ'g, Inc.*, 106 F. Supp. 3d 9 (D.D.C. 2015) ........................................................................................................... 16

*Facebook, Inc. v. Duguid*, 141 S. Ct. 1163 (2021) .................................................... 6, 7, 8

*Fiorarancio v. WellCare Health Plans, Inc.*, No. CV 21-14614 (SRC), 2022 WL 111062 (D.N.J. Jan. 11, 2022) ............................................................................................................ 16

*Krakauer v. Dish Network L.L.C.*, 311 F.R.D. 384 (M.D.N.C. 2015) (4th Cir. 2019) ............... 17

*Morales v. Sunpath Ltd.*, No. 120CV01376RGAMPT, 2022 WL 610766 (D. Del. Feb. 1, 2022)  7

*Panzarella v. Navient Sols., Inc.*, 37 F.4th 867 (3d Cir. 2022) ............................................. passim

*Perrong v. MLA Int'l., Inc.*, 2022 WL 1238603 (M.D. Fl. March 2, 2022) ................................. 12

*Perrong v. S. Bay Energy Corp.*, No. 2:20-CV-05781-JDW, 2021 WL 1387506 (E.D. Pa. Apr. 13, 2021). ................................................................................................................................ 15, 17

*Perrong v. Victory Phones LLC*, No. CV 20-5317, 2021 WL 3007258 (E.D. Pa. July 15, 2021) . 4

*Robert W. Mauthe MD PC v. Millennium Health LLC*, 58 F.4th 93 (3d Cir. 2023) ................... 16

*Scoma Chiropractic, P.A. v. Nat'l Spine & Pain Centers LLC*, No. 2:20-CV-430-JLB-MRM, 2021 WL 949613 (M.D. Fla. Mar. 12, 2021). ............................................................................ 16

*Shelton v. FCS Capital LLC*, 2019 WL 6726404 (E.D. Pa. Dec. 11, 2019) ................................ 12

*Smith v. Vision Solar LLC*, No. CV 20-2185, 2022 WL 1172985 (E.D. Pa. Apr. 20, 2022) ........ 9

*Swartz v. JPMorgan Chase Bank, N.A.*, No. 3:21-CV-01064, 2022 WL 987883 (M.D. Pa. Mar. 31, 2022) .................................................................................................................................... 6

*United States v. Weiss*, 52 F.4th 546 (3d Cir. 2022) ................................................................. 16

**Statutes**

47 C.F.R. §64.1200(13). .............................................................................................................. 15

47 U.S.C. § 227(b) ..................................................................................................................... 3, 6

73 Pa. Cons. Stat. § 201-2(4)(XVII)(A) ...................................................................................... 13

73 Pa. Cons. Stat. § 2241 ............................................................................................................ 11

73 Pa. Cons. Stat. § 2242 ............................................................................................................ 14

73 Pa. Cons. Stat. § 2246 ............................................................................................................ 12

73 Pa. Cons. Stat. §201 .............................................................................................................. 12

**Other Authorities**

*Central Marketing Services Inc.*, NEW YORK BUSINESS CONNECTS ........................................ 8, 14

Webster's Collegiate Dictionary (1936) .................................................................................... 17

Webster's Ninth New Collegiate Dictionary (1990) ................................................................... 17

**Rules**

FED R. CIV P. 12(b)(6) .................................................................................................................. 5

FED R. CIV. P. 12(b)(1) ............................................................................................................... 15

FED. R. CIV. P. 8(a)(2) .................................................................................................................. 5

## INTRODUCTION

The Court should deny Defendant CMI Marketing Research and Defendant Carol McMahon's ("Defendants'") motion to dismiss in all respects.

*First*, Plaintiff sufficiently alleges a claim under the Telephone Consumer Protection Act's "automatic telephone dialing system" ("ATDS") provision, 47 U.S.C. § 227(b)(1)(A)(iii), because, consistent with the Third Circuit's ruling in *Panzarella v. Navient Sols., Inc.*, 37 F.4th 867, 876 (3d Cir. 2022), Plaintiff alleges that Defendants' system used a random or sequential number generator to select numbers from a preproduced list that included the Plaintiff. The facts

and circumstances of the calls, including that there were at least five calls within the span of two days, within hours of each other, supports Plaintiff's allegation that an ATDS was used to select the numbers to dial from that list to make the calls in violation of the TCPA.

*Second*, Plaintiff has sufficiently pled violations of Pennsylvania's Telemarketer Registration Act ("PTRA"). Importantly, the Middle District of Pennsylvania has held that there is a private right of action under the PTRA as incorporated through the Unfair Trade Practices and Consumer Protection Law ("UTP/CPL").

*Third*, Plaintiff has alleged at the pleading stage that the calls were made for telemarketing purposes sufficient to demonstrate entitlement to relief under both the PTRA and TCPA. Specifically, Plaintiff alleges that Defendants run a survey company as a pretext for marketing operations. Consistent with the case law on this issue, Plaintiff's allegations should proceed to be tested and proven in discovery.

The Court should therefore deny Defendants' motion.

## FACTUAL BACKGROUND

Despite Defendants' chagrin that Plaintiff caught them making illegal calls with an ATDS, the Plaintiff brought this action to enforce a clear law that means what it says–don't call certain protected numbers with an ATDS or numbers on the Do Not Call List. There is nothing wrong with Plaintiff doing exactly what Congress intended–enforcing the law. *See Perrong v. Victory Phones LLC*, No. CV 20-5317, 2021 WL 3007258, at *4 (E.D. Pa. July 15, 2021) (rejecting "the notion that expertise in plaintiff-side TCPA litigation is necessarily bad"). Plaintiff, who had no previous interaction with the Defendants, received at least five calls from them to the same telephone number in a single 27-hour period in December of 2021. (Compl. ¶¶ 38-42). Plaintiff also received another call from Defendants to a different telephone number. (Compl. ¶ 43). These calls were placed to Plaintiff's telephone numbers, which are protected

4

numbers as they are charged for the calls and on the Federal and Pennsylvania Do Not Call Lists.
(Compl. ¶¶ 36-37). The calls were placed using an ATDS in violation of the TCPA, including
because the call was placed using the Asterisk system, which is the underlying framework for
multiple systems that constitute an ATDS under the law. (Compl. ¶¶ 45, 48-50); (Perrong Decl.).
Although pretextual, the calls were placed for marketing purposes. (Compl. ¶¶ 19–25).

## LEGAL STANDARD

In order to state a claim upon which relief can be granted, a complaint must contain, *inter
alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." FED.
R. CIV. P. 8(a)(2).  The requirement that a plaintiff "show" that he or she is entitled to relief
means that a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim
to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell
Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Importantly, the standard for a motion to dismiss under FED R. CIV P. 12(b)(6) looks only
to the face of the plaintiff's complaint and the facts and inferences therein. A complaint may be
dismissed pursuant to Rule 12(b)(6) only where it appears that there are not "enough facts to
state a claim that is plausible on its face," not merely because the defendant proffers some
contrary facts. *Twombly*, 550 U.S. at 570. While Rule 8(a)(2) "does not require detailed factual
allegations … it demands more than an unadorned, the-defendant-unlawfully-harmed-me-
accusation." *Iqbal*, 556 U.S. at 678 (cleaned up). A complaint which "tenders 'naked
assertion[s]' devoid of 'further factual enhancement'" does not suffice. *Id.* (citation omitted).

## LAW AND ARGUMENT
**A.  Plaintiff has alleged sufficient facts, accepted as true, to support a finding that
Defendants used an ATDS to contact the Plaintiff.**

At issue here, the TCPA prohibits using an Automatic Telephone Dialing System
(ATDS) to send calls to numbers for which the called party is charged for the call. 47 U.S.C. §

227(b)(1)(A)(iii). In order to sufficiently allege a claim under this portion of the TCPA, a plaintiff must plausibly allege that the defendant *made* a call *using* an ATDS. *Panzarella v. Navient Sols., Inc.*, 37 F.4th 867, 876 (3d Cir. 2022).

What is an ATDS, and what does it mean to use one to make a call? Recently, the Supreme Court clarified that an ATDS is equipment which either *stores* numbers to be called using a random or sequential number generator or *produces* numbers to be called using a random or sequential number generator. *Facebook, Inc. v. Duguid*, 141 S. Ct. 1163, 1167 (2021). The Court also clarified that an ATDS includes list-based predictive dialers, such as one that "use[s] a random number generator to determine the order in which to pick phone numbers from a preproduced list." *Id.* at 1172 n.7. Using an ATDS means using its autodialing functionalities to make a call. *Panzarella*, 37 F.4th at 878. This includes *using* a random or sequential number generator to select numbers from a preproduced list. *Id.* However, if the defendant *uses* something other than a random or sequential number generator (its autodialing functionalities) to select numbers from a preproduced list, the defendant does not *use* an ATDS to place the call. *Id.* at 881-882. The Plaintiff and Defendants therefore agree that *Facebook* requires that the equipment must *qualify* as an ATDS and *Panzarella* requires that the qualified equipment be *used* to place the calls.

Importantly, after *Facebook*, district courts across the country have had no trouble refusing to dismiss cases where, as here, the plaintiff has plausibly alleged sufficient facts to support the inference that the defendant's calling system met the statutory definition of an ATDS. *See, e.g.*, *Camunas v. Nat'l Republican Senatorial Comm.*, 541 F. Supp. 3d 595, 602 (E.D. Pa. 2021); *Swartz v. JPMorgan Chase Bank, N.A.*, No. 3:21-CV-01064, 2022 WL 987883, at *3 (M.D. Pa. Mar. 31, 2022); *Morales v. Sunpath Ltd.*, No. 120CV01376RGAMPT, 2022 WL

610766, at *9 (D. Del. Feb. 1, 2022). Because of the complex technical inquiry involved, post-*Facebook*, ATDS issues are summary judgment ones. And post-*Panzarella*, no district court has had occasion to address its impact on a motion to dismiss. It follows, however, that if *whether* a system is an ATDS is a summary judgment issue, then, *a fortiori*, the issue of if the *ATDS* functionality was *used* to place the call is likewise a summary judgment issue.

Relying on the Third Circuit's decision in *Panzarella*, Defendants claim that the Plaintiff's allegations do not support the conclusion that the Defendants used or employed ATDS functionality to contact the Plaintiff because it contends that *Panzarella* legalized the use of list-based dialing systems. Not so. Defendants misunderstand both the limited clarifying effect of *Panzarella* and misunderstand how the Plaintiff's allegations are not inconsistent with, and in fact support, ATDS usage. In fact, Defendants proffer no criteria for how they claim they selected the telephone numbers to be called in a way that disproves ATDS use under *Panzarella*.

Under *Panzarella*, a system that uses a random or sequential number generator to store or produce telephone numbers, and then dials those numbers, is an ATDS. 37 F.4th at 881. This holding is consistent with *Facebook*, which held that a system that stores lists of telephone numbers randomly or sequentially is an ATDS. 141 S. Ct. at 1172 n.7. This is so even if the telephone numbers in the list *themselves* were not randomly or sequentially generated. *See Panzarella*, 37 F.4th at 879-880. *Panzarella* stands for the proposition that, when using a list of numbers to contact people, the ATDS must *use* or *employ* functionality other than a random or sequential number generator to select the numbers to be called. Other triggers, such as birthdays or account delinquency, are neither random nor sequential, and thus *using* a dialer to place calls with such criteria does not use the dialer's ATDS functionality. *See id.* at 879-881.

For this reason, Facebook did not *use* an ATDS because it did not use the ATDS' random or sequential number generation functionality to select numbers. Rather, it used a *specific user action*, compromised account security, to direct a computer to send the messages. *Facebook*, 141 S. Ct. at 1168. Similarly, the Ninth Circuit recently held in *Brickman v. United States* that Facebook did not use an ATDS when it sent birthday text messages because the *birthdays*, not random or sequential number generators, were employed to draw numbers to be called. 56 F.4th 688 (9th Cir. 2022). Likewise, the defendant in *Panzarella* did not *use* an ATDS because it used the select criteria of delinquent borrowers to dial numbers. Put another way, *delinquency*, not random or sequential means, was the functionality used to select numbers from a list of numbers associated with student loan accounts and then dial them. *Panzarella*, 37 F.4th at 882.

Here, the Plaintiff pleads *more* than other ATDS cases where motions to dismiss were likewise denied. Plaintiff received five of the calls alleged in a single 27-hour period. (Compl. ¶¶ 38-42). The high volume of calls suggests that the Defendants used a predictive dialer to attempt to contact Plaintiff in an automated fashion to predict when he was most likely to answer. (Compl. ¶ 54). This ATDS technology is called a predictive dialer. Defendants themselves admit they use predictive dialers. *Central Marketing Services Inc.*, NEW YORK BUSINESS CONNECTS, https://newyorkbusinessconnects.com/item/central-marketing-services-inc/ [https://archive.is/4Uqee] ("We have experience in . . . predictive dialing."). And Defendants use a telephone "supercarrier," AireSpring, which is specifically targeted to the bulk call market.

As *Panzarella* makes clear, predictive dialing modes are sufficient to meet the ATDS criteria. 37 F.4th at 870 n.2, 880 (discussing how defendant did not use "predictive" mode and citing favorably to congressional testimony outlining harms of predictive dialers.). Numerous other courts in this district and elsewhere have agreed that predictive dialers specifically are an

ATDS. *See, e.g.*, *Smith v. Vision Solar LLC*, No. CV 20-2185, 2022 WL 1172985, at *1 (E.D. Pa. Apr. 20, 2022); *Anthony v. Pro Custom Solar, LLC*, No. EDCV2001968JAKKKX, 2022 WL 17886032, at *1 (C.D. Cal. Nov. 14, 2022) ("[T]he Federal Communications Commission ('FCC') considers a predictive dialer to be an ATDS as defined by the TCPA.").

Even putting aside the Plaintiff's allegations surrounding predictive dialer use, the Plaintiff has alleged that the Defendants used the Asterisk telephone system. The Plaintiff has extensive experience with this telephone system, which is the backbone of most every computerized telephone system on the market today. (Perrong Decl.). Asterisk is a framework for building telecommunications applications, just like the Apple iOS system runs iPhones. (*Id.*). Because of its flexibility, the Asterisk system can be easily programmed to be an ATDS; it is the framework behind some of the most popular ATDS systems today, including ViciDial. (*Id.*). Plaintiff even cites to the computer code necessary to program Asterisk to use its built-in functionality as an ATDS, including in a predictive mode. (Compl. ¶¶ 45, 48-50).

Finally, the facts and circumstances of the calls support the logical conclusion that the Defendants must have used the ATDS' sequential or random number generator functionality to send the messages. Based on these facts, it is plausible that the Defendants used a script to automate the sending of the calls either randomly or sequentially from their list until someone answered the call, and only then connect it to a human. (Compl. ¶¶ 52-56).

A hypothetical illustrates how the Third Circuit's holding in *Panzarella* interacts with the Supreme Court's holding in *Facebook* and how a list-based dialer may or may not be used as an ATDS. Consider the following list of telephone numbers and other information which may be present in a hypothetical survey entity's calling list or database:

| List Order | Telephone Number | Weekly Purchases | Household Income |
|---|---|---|---|
| 1 | 215-555-0001 | 1 | < $50k |
| 2 | 215-555-0003 | 11 | < $50k |
| 3 | 215-555-0004 | 9 | > $50k |
| 4 | 215-555-0007 | 2 | $0 |
| 5 | 215-555-0002 | 6 | < $50k |
| 6 | 215-555-0005 | 7 | < $50k |
| 7 | 215-555-0006 | 4 | > $50k |
| 8 | 215-555-0008 | 6 | < $50k |
| 9 | 215-555-0009 | 7 | > $50k |
| 10 | 215-555-0010 | 12 | > $50k |

How the defendant selects the telephone numbers to be called dictates wither or not ATDS functionality was *used* and therefore whether or not the calls violated the TCPA. This is consistent with Congress' intent to remedy the harm caused by mass "autodialed calls" because Congress "found autodialer technology to be uniquely harmful." *Id.* at 879 (cleaned up).

A survey entity could conceivably use the assistance of an ATDS in many ways to message potential recipients legally. It could use a "list mode" functionality to send calls. *Id.* at 881. For instance, it could use information from low-income individuals making fewer than five purchases weekly, list telephone numbers 1 and 4, and ascertain economic factors responsible for their low spending. It could also send messages to list telephone numbers 2, 5, 6, and 8 to ascertain why they made more than five weekly purchases despite their low incomes. Like *Panzarella* and *Facebook*, such messages do not violate the TCPA because they are sent not randomly or sequentially, but rather based on specific criteria. Though sent from a computer, they nevertheless do not implicate the harm the TCPA's ATDS rules were designed to alleviate.

By contrast, an entity could also use an "automatic mode" functionality to illegally send the calls. *Id.* As here, if an entity programmed its ATDS to dial all persons in the list ordered 1, 5, 2, 3 . . . continually until they agree to take the survey, it violates the TCPA because it uses the

sequential number generator functionality to generate the telephone numbers to be called (215-555-0001, -0002, -0003, -0004 . . .). Similarly, if the entity programmed its ATDS to dial all numbers in the list ordered 1, 2, 3 . . . until they take the survey, it violates the TCPA because it uses a random number generator to generate the telephone numbers to be called (215-555-0001, -0003, -0004, . . .). In both instances, the entity employs ATDS capacities to make automated calls. As *Panzarella* clarified, these calls violate the TCPA because their nature makes it more likely that the messages will reach uninterested persons or tie up multiple telephone lines. *Id.* at 879. ("[Congress] crafted these prohibitions with autodialing's harms in mind."). Using an ATDS in this way *does* implicate the harm Congress sought to remedy when it enacted the TCPA because it employs the ATDS as an autodialer. *Id.* at 878.

The facts of this case support the inference at the pleadings stage that Defendants used the latter method to contact the Plaintiff and not the former. The messages the Plaintiff received did not state that the Plaintiff received the call because he met some specific criteria. By contrast, the little information in the message and the circumstances of the calls show that Plaintiff received the calls because, like *all* others on Defendants' list, he was in random or sequential order therein. Absent the benefit of discovery, the Plaintiff cannot and should not be required to plead such minutiæ of how the predictive dialer is programmed or how often it is directed to run through the list randomly or sequentially to make calls. Ultimately, however, these facts support the conclusion that the Defendants illegally employed the ATDS for its autodialing and predictive dialing functionality, consistent with the Third Circuit's decision in *Panzarella*.

**B.  There exists a private right of action for violations of the PTRA.**

District Courts both in Pennsylvania and elsewhere have tussled with the issue of whether or not the Pennsylvania Telemarketer Registration Act ("PTRA"), 73 Pa. Cons. Stat. § 2241,

arms private plaintiffs with the powerful enforcement mechanism of bringing a private right of action against an entity alleged to have violated its provisions. Defendants cite to this Court's reasoning in *Shelton v. FCS Capital LLC* to support their assertion that the PTRA has no private right of action. 2019 WL 6726404 (E.D. Pa. Dec. 11, 2019). However, the plaintiff's loss in *Shelton* appears more than anything to be a case of inartful pleading that insufficiently demonstrated the nexus codified in 73 Pa. Cons. Stat. § 2246 between the PTRA and Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTP/CPL"), 73 Pa. Cons. Stat. §201. Similarly, the decision in *Perrong v. MLA Int'l., Inc.* relied on *Shelton* for its erroneous holding. 2022 WL 1238603 (M.D. Fl. March 2, 2022).

However, the Middle District of Pennsylvania's more recent opinion in *Bower v. Nat'l Admin. Serv. Co., LLC* is particularly instructive as it explains the nuances of the interplay between the PTRA and UTP/CPL. No. 4:21-CV-00998, 2022 WL 821166, at *2 (M.D. Pa. Mar. 17, 2022). In *Bower*, the District Court correctly observed that no part of the PTRA provides for a private right of action. *Id.* However, the District Court also observed that the PTRA provides that a violation serves as a "predicate claim" under the UTP/CPL, which itself has a private right of action. *Id.*; 73 Pa. Cons. Stat. § 2246 ("A violation of this act is also a violation of the act of December 17, 1968 (P.L. 1224, No. 387), known as the Unfair Trade Practices and Consumer Protection Law."). So long as a plaintiff alleges sufficiently the statutory nexus between the PTRA and UTP/CPL, that is, alleges that a PTRA violation is sufficient to serve as a predicate claim under the UTP/CPL, a plaintiff will prevail in setting forth his claim. *Id.*

But even if this court were to hold that a plaintiff must directly allege a violation of the UTP/CPL instead, Plaintiff has done so. By failing to identify itself, and indeed by requiring the Plaintiff to obtain a subpoena to uncover the true entity behind the fictitiously-named CMI

Research, the Defendants also violated the UTP/CPL outright because 73 Pa. Cons. Stat. § 201-2(4)(XVII)(A) deems it unfair and deceptive for an entity to place calls without identifying itself. *See Bower*, 2022 WL 821166, at *2. Accordingly, even if this Court were to find that alleging a PTRA violation is insufficient to allege a violative predicate act under the UTP/CPL giving rise to a cause of action under the UTP/CPL, the Plaintiff has nevertheless alleged conduct that *itself* violates the UTP/CPL, obviating the predicate acts analysis entirely.

    C.  **<u>Plaintiff sufficiently alleges the calls were telemarketing and has therefore pled a claim for relief under the PTRA and TCPA's section C.</u>**

      The Defendants claim they are not subject to the provisions of the PTRA or TCPA's section C because they are not "telemarketers." However, based on the allegations in Plaintiff's well-pled complaint, which are presumptively true, these counter-assertions are more appropriate to a summary judgement and are not ripe for disposition at the motion to dismiss stage.

    1.  **Defendants are "telemarketers" under the plain meaning of the PTRA.**

      Defendants claim they are not subject to any of the PTRA's requirements because the PTRA only applies to "telemarketers," and Defendants are, in their own words, and notably without any evidentiary or factual support, not telemarketers. Defendants claim that they are not so because the calls were not conducted to induce the purchase of goods or services and therefore did not constitute telemarketing. This argument fails for two reasons.

      First, the Plaintiff *has* alleged that the calls were conducted to induce the purchase of goods and services. As noted above, this is all the Plaintiff need allege at the Motion to Dismiss stage. And such an allegation is not merely based on threadbare assertions, but has sufficient factual basis. Notably, based on the content of the calls, the Defendants' evasive conduct, and judicially-noticeable documents from industry professionals, the Plaintiff has alleged that the surveys were a pretext for future marketing and solicitations. (Compl. ¶¶ 2, 19-25, 58).

Defendants' contention that the calls were political survey calls defies logic as they were placed *after* the November 2021 election. Instead, most of the calls were placed in the heart of the December 2021 holiday shopping season, a few days before Christmas, which further supports the inference that the calls were pretextual telemarketing calls disguised as surveys. And, as will be explained below, the fact that the pretextual survey call is one step removed from the survey call is insufficient to support a holding that the call was placed for *bona fide* marketing purposes. These allegations mirror those in the TCPA, and so Defendants are telemarketers under Pennsylvania law. Defendants' unwarranted and unsupported assertions to the contrary are insufficient for motion to dismiss purposes and are frankly meaningless.

Second, even *bona fide* non-pretextual survey callers constitute "telemarketers" under the PTRA. A plain-text reading of the statute makes clear that telemarketing can include "plan[s], program[s], and campaign[s]" that ultimately "induce the purchase of services."  73 Pa. Cons. Stat. § 2242. Assuming *arguendo* the calls were political survey calls placed to gain information for political candidates (which they most assuredly were not, particularly as they were placed *after* the November 2021 elections), they still meet the definition since the purpose of the calling campaign is to induce voting for (i.e. purchasing) a political candidate's services.

Moreover, as the definitions make clear, if any of the information will ultimately be used for the "sale of consumer goods or services," such calls are "telephone solicitation calls." 73 Pa. Cons. Stat. § 2242. Importantly, Defendants advertise that they sell their market research data to multiple verticals, including "consumer," and can code and tabulate such data. *Central Marketing Services Inc.*, [https://archive.is/4Uqee]. Therefore, even if not pretextual and even if the calls were political surveys, such data could ultimately be repackaged and resold to other vertical industries that sell consumer goods and services. As such, information collected on the

calls would ultimately have been used for the "sale of consumer goods or services" and therefore constituted telephone solicitations under the PTRA.

      **2.  The calls were placed for "telemarketing purposes" under the TCPA. Defendants should not stand to benefit from their own misconduct and misrepresentations.**

Importantly, the TCPA's implementing regulations contained in section C require, as a prerequisite, that the calls be for "telemarketing purposes," which applicable regulations define as a call made "for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services." 47 C.F.R. §64.1200(13). Provided this statutory prerequisite is met, a plaintiff seeking to recover under this section of the statute must also demonstrate his standing by demonstrating an injury-in-fact for Article III standing purposes. [1] *Perrong v. S. Bay Energy Corp.*, No. 2:20-CV-05781-JDW, 2021 WL 1387506, at *2 (E.D. Pa. Apr. 13, 2021).

As to the first prong, that the calls be placed for "telemarketing purposes," Defendants contend that the calls were not placed for such purposes and as a result the Plaintiff's claims fail. Not so. In his Complaint, the Plaintiff alleges that the calls were placed for telemarketing purposes. As described above, the Plaintiff has alleged sufficient facts to demonstrate the same, and such contentions are adequate at the motion to dismiss stage.

Multiple federal courts have concluded that survey calls can be pretextual and therefore qualify as telemarketing. The FCC itself has contemplated "that savvy companies may devise a multilayered approach to avoid violating the TCPA" by using a "benign" communication that "ultimately leads to the promotion of goods or services." *Scoma Chiropractic, P.A. v. Nat'l Spine & Pain Centers LLC*, No. 2:20-CV-430-JLB-MRM, 2021 WL 949613, at *3 (M.D. Fla. Mar. 12,

---

[1] Though the Defendants raise the issue of standing addressed in *South Bay*, the Defendants do not appear to challenge standing under FED R. CIV. P. 12(b)(1), as would have been proper, as a challenge under Article III's standing requirements is an assertion that the Court lacks subject-matter jurisdiction.

2021). Even purportedly "free" offers often come with strings attached so as to render them solicitations to purchase for TCPA purposes. *Fiorarancio v. WellCare Health Plans, Inc.*, No. CV 21-14614 (SRC), 2022 WL 111062, at *3 (D.N.J. Jan. 11, 2022) (holding that calls offering free home wellness visits and a preventative care program were pretextual solicitations prohibited by the TCPA). This is exactly what Plaintiff alleges happened here.

　And courts are uniformly in agreement that, when a pretext is alleged, the issue should proceed to discovery. *See, e.g.*, C*omprehensive Health Care Sys. of the Palm Beaches, Inc. v. M3 USA Corp.*, 232 F. Supp. 3d 1239, 1242 (S.D. Fla. 2017);  *Drug Reform Coordination Network, Inc. v. Grey House Publ'g, Inc.*, 106 F. Supp. 3d 9, 13 (D.D.C. 2015). The Third Circuit has also endorsed this approach and favorably cited to the District Court permitting discovery as to the pretextual nature of the calls. *Robert W. Mauthe MD PC v. Millennium Health LLC*, 58 F.4th 93, 95 (3d Cir. 2023).

Furthermore, because the FCC's regulations define neither "purchase" nor "investment" in services, this Court must examine how these terms would have been defined at the time the statute was adopted. *United States v. Weiss*, 52 F.4th 546 (3d Cir. 2022). With regard to the TCPA, there are two potentially relevant time frames to consider: 1934, when the Telecommunications Act of which the TCPA is a part was enacted, and 1991, the year the FCC's regulations first included a provision defining the term "telephone solicitation" with regard to a purchase or investment. Regardless of which the Court chooses, the meaning of the terms "purchase" and "investment" are the same.

Purchase means "To obtain by paying money or its equivalent" or "by any outlay, as of

labor, danger, or sacrifice." *Compare* Webster's Ninth New Collegiate Dictionary (1990) *with* Webster's Collegiate Dictionary (1936). Investment means "The outlay of money usually for income or profit." *Id.*

Therefore, even if the calls were *bona fide* survey calls, they nevertheless requested the Plaintiff's labor and time for a survey service. The calls therefore met the statutory definition of telemarketing. Here, the calls were soliciting Plaintiff to invest in Defendants' survey services. Although Plaintiff was not asked to pay money to Defendants to participate in the survey, Plaintiff was being asked to invest his time, energy, and labor in responding to it, and get no benefit in return. This conduct constitutes a sacrifice of Plaintiff's right to his own time and energy, as well as sharing his opinions for free. Accordingly, even if the calls were not pretextual, the calls were solicitations because Plaintiff was requested to provide an outlay of his own time, energy, and opinions, to merely participate in the survey services.

Second, Plaintiff has standing for his internal Do Not Call List and Do Not Call Policy claims under Section 227(c) of the TCPA and its implementing regulations. The facts of *South Bay* were distinct from those here. 2021 WL 1387506. As a preliminary matter, in *South Bay*, the defendant hired a third-party marketing firm to place the calls. *Id.* at *3. There is no such principal-agent problem in this case. More importantly, however, and unlike here, in *South Bay*, the plaintiff never told any of the defendants not to call him. *Id.* at *2.

Here, however, the Plaintiff alleges that he hung up the call, therefore indicating to the caller that he was not interested and did not want to receive future calls. (Compl. ¶ 38). That Plaintiff did not explicitly say "do not call me" is no matter; merely hanging up is sufficient to constitute a request not to call in the future. *Krakauer v. Dish Network L.L.C.*, 311 F.R.D. 384, 389 (M.D.N.C. 2015), aff'd, 925 F.3d 643 (4th Cir. 2019). Accordingly, unlike in *South Bay*,

placing the Plaintiff on an internal Do Not Call list and having an internal Do Not Call policy that addresses hang-up calls would have prevented the injury complained of here, thus conferring Article III standing by having a concrete injury-in-fact.

And requiring the Plaintiff to seek out the Defendants in order to send them a more explicit Do Not Call request would merely reward the Defendants for concealing their identity. Defendants cannot use their own malfeasance to hide their identity and therefore preclude individuals from making Do Not Call requests and then out of the same mouth complain that those same persons lack standing because they were unable to identify the true identity of the Defendants who concealed it. As such, Defendants' own misconduct defeats its argument.

For the foregoing reasons, the Plaintiff has alleged both that the Defendants placed a call for "telemarketing purposes" under both the PTRA and TCPA, and that the Plaintiff has standing for his TCPA internal DNC claims because he did suffer an injury-in-fact.

## CONCLUSION

For the foregoing reasons, the Court should Deny Defendants' motion.

Dated: **March 13, 2023**

_____/s/_____
Andrew R. Perrong
*Plaintiff Pro-Se*
1657 The Fairway #131
Jenkintown, PA 19046
Phone: 215-791-6957
Facsimile: 888-329-0305
andyperrong@gmail.com

## CERTIFICATE OF SERVICE

Plaintiff certifies that on March 13, 2023, he filed the foregoing on the Court's Electronic Document Submission (EDS) system for *pro-se* litigants.