UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA
------------------------------------------------------------x

ANDREW R. PERRONG,                                    INDEX NO.: 22 CIV. 03733 (JFM)

                Plaintiff,

- against -


CMI MARKETING RESEARCH INC. et al.

                Defendants.

------------------------------------------------------------x


**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION
PURSUANT TO FRCP 12b(6) TO DISMISS PLAINTIFF'S COMPLAINT**


**HILL, BETTS & NASH LLP**
Elizabeth A. McCoy (EAM -8448)
(*Admitted Pro Hac Vice*)
Attorneys for Defendants
14 Wall Street, Suite 5H
New York, New York 10005
(212) 839-7000

George Zacharkow, Esq.
Deasey, Mahoney & Valentini, Ltd.
1601 Market Street, Suite 3400
Philadelphia, PA 19103
(215) 587-9400

Defendants CMI Marketing Research, Inc. and Carol McMahon ("Defendants"), by their attorneys Hill, Betts and Nash and Deasey, Mahoney & Valentini, Ltd., submit this Reply Memorandum in Support of their Motion pursuant to FRCP 12b(6) to dismiss Plaintiff's complaint for failure to state a claim. Plaintiff's Opposition only reinforces the fact that he has not and cannot state a claim for relief.

## PLAINTIFF'S COMPLAINT DOES NOT STATE A CLAIM UNDER THE TCPA's PROHIBITION AGAINST CALLING WITH AN ATDS

Despite all evidence to the contrary Plaintiff persists in arguing that *Panzarella v. Navient Sols., Inc.*, 37 F.4th 867 (3d Cir. 2022) stands for the proposition that list-based calling (i.e, when a caller calls a list of numbers that it has imported from an external source) qualifies as an ATDS if the system calls those imported numbers randomly or calls them sequentially. Panzarella decidedly did not stand for that proposition. As the Third Circuit stated therein:

> [W]hat does it mean to make a call using an ATDS's autodialing functionalities? Here, the TCPA's definition of an ATDS proves illuminating. It shows that, at its core, autodialing is the "product[ion] or stor[age] of telephone numbers to be dialed, using a random or sequential number generator." § 227(a)(1). After all, without the capacity to perform one of these functions, a dialing system cannot qualify as an ATDS. *Id.* We already reached this conclusion implicitly in *Dominguez* when we explained that the TCPA defined an ATDS based on its "***present capacity to function as an autodialer by generating random or sequential telephone numbers and [to] dial[] those numbers.***" 894 F.3d at 121;
> \*\*\*
> A simple hypothetical illustrates how sections 227(a)(1) and 227(b)(1)(A) work together. Imagine Junk Call Corp. employs a dialing system with a switch that allows Junk Call to make calls in one of two modes: "automatic," in which the system dials random or sequential telephone numbers, and "list," in which the system dials the telephone numbers imported from Junk Call's customer list….***Because Junk Call dials random or sequential numbers only when it employs automatic mode, automatic-mode calls, but not list-mode calls, threaten the harm the TCPA targets—telemarketing "that risks dialing emergency lines randomly or tying up all the sequentially numbered lines at a single entity." Duguid, 141 S. Ct. at 1171. Congress would have little reason to expose Junk Call to liability for its list-mode calls as these calls do not present these risks. If we interpreted section 227(b)(1)(A) to proscribe calls where an ATDS has not used its number-generation capabilities, then we "would take a chainsaw to the[] nuanced***

1

> *problems" Congress intended to remedy. Id. Heeding the Supreme Court's advice, we read section 227(b)(1)(A) to protect Americans from a particular type of harm as Congress intended (and drafted). See id. Thus, we hold that, for a call to violate section 227(b)(1)(A), that call must employ either an ATDS's capacity to use a random or sequential number generator to produce telephone numbers to be dialed or its capacity to use a random or sequential number generator to store telephone numbers to be dialed.*

(emphasis added). The Court clearly stated that, to qualify as an ATDS, the system must both "have" and "use" "number-generation capabilities"—i.e. the system must, in some fashion, **generate the numbers to be called**: either a series of random numbers or a series of sequential numbers. Only this definition would threaten the harm the TCPA targets, the Court explained, by generating a random number that turns out to be an emergency line, or generating sequential numbers that tie up all the lines at a single entity. See also e *Deleo v. Nat'l Republican Senatorial Comm.*, 2021 U.S. Dist. LEXIS 210858, *18-20, 2021 WL 5083831 (D.N.J. November 1, 2021) (Plaintiff's allegation that Defendant "uses dialing technology, which calls phone numbers from a stored list using a random or sequential number generator to select those phone numbers" did not state a claim because "a stored list" was "the exact characterization of an ATDS that the Supreme Court rejected in [*Facebook v.*] *Duguid.*")

Numerous other Courts that have considered Plaintiff's identical argument (which is based on some less than clear language in Footnote 7 of *Facebook*) have rejected it. See, e.g., *Camunas v. Nat'l Republican Senatorial Comm.*, 570 F.Supp.3d 288, 295-296 (E.D. Pa. 2021) (rejecting argument that dialing technology that calls numbers from a stored list using a random or sequential number generator to *select those numbers* qualifies as an ATDS" and explaining that the numbers referenced in Facebook's footnote 7 were themselves **created** by the same system using a random or sequential number generator); *Beal v. Outfield Brew House, LLC*, 29 F.4th 391, 394-395 (8th Cir. 2022) (rejecting argument that system that used a "numerically based randomizer to shuffle

and select" phone numbers from an imported list was an ATDS); *Tehrani v. Joie De Vivre Hospitality, LLC*, 2021 U.S. Dist. LEXIS 165392, 2021 WL 3886043 (N.D. Ca. August 31, 2021) (rejecting argument that a system qualifies as an ATDS where it does not create the phone numbers themselves but uses a list of preexisting numbers, generates an index number using either a sequential number generator [e.g. 1001, 1002, 1003, etc.], or a random generator, assigns the generated index numbers to the phone numbers from a list, and later calls those numbers); *Barry v. Ally Fin., Inc.*, 2021 U.S. Dist. LEXIS 129573 at *17-19, 2021 WL 2936636 (E.D. Mich. July 13, 2021) (rejecting argument that system qualifies as an ATDS if it uses a random number generator to determine the order in which to pick phone numbers from a preproduced list).

Plaintiff misrepresents statements in cases concerning so called "predictive dialing."[1] He claims that *Panzarella* "makes clear [that] predictive dialing modes are sufficient to meet the ATDS criteria" (Plaintiff's Memo at 8) based on nothing more than: 1) a footnote that states that a predictive dialing mode was not used in the calls to the plaintiff therein, but otherwise says nothing about predictive dialing, and 2) a generalized reference to legislative history concerning the telemarketing industry's increasing use of predictive dialers. In fact, *Panzarella* made no pronouncement on the relationship between predictive dialing and ATDSs. Plaintiff misleadingly quotes from *Anthony v. Pro Custom Solar, LLC*, 2022 U.S. Dist. LEXIS 231865, 2022 WL 17886032 at * 1 (C.D. Ca. Nov. 14, 2022), claiming the case says that "the Federal Communications Commission ("FCC") considers a predictive dialer to be an ATDS as defined by the TCPA," when in fact the quote reads that "'*It is alleged*' in Plaintiff's complaint that the FCC

---

[1] At any rate, Defendants deny that any "predictive dialing" technology was used to call Plaintiff, and that any random or serial number technology was used to call him.

considers a predictive dialer to be an ATDS…" Id. (emphasis added). To dispel all doubt, the case later holds:

> Although [Facebook v.] *Duguid* "neither mentions predictive dialers nor says anything to support . . . a blanket reading . . . that predictive dialers are categorically unable to possess random or sequential generators," *Stewart*, 2021 WL 6618544, at *3, simply alleging that a system is a predictive dialer is not sufficient to show that a system is an ATDS under the statute. *See Duguid*, 141 S. Ct. at 1171 ('Equipment that merely stores and dials telephone numbers" does not meet the statutory definition of an ATDS.'). After *Duguid*, only predictive dialers that are 'paired with certain software' to 'store or produce telephone numbers . . . using a random or sequential number generator' are capable of meeting the definition of an ATDS. *Id. See also Austria v. Alorica, Inc.*, 2021 WL 5968404, at *6 (C.D. Cal. Dec. 16, 2021) (to qualify as an ATDS, equipment must employ a number generator to generate the phone numbers themselves).

*Anthony*, 2022 U.S. Dist. LEXIS 231865 at *12.[2]

Further Plaintiff cites *Camunas v. Nat'l Republican Senatorial Comm'n*, 541 F.Supp. 3d 595 (E.D. Pa. 2021) for the proposition that post-Facebook courts have refused to dismiss cases where the plaintiff has alleged sufficient facts to support the statutory definition of an ATDS (Plaintiff's Memo, p. 6); in fact, that case dismissed plaintiff's ATDS claims without prejudice and, when plaintiff filed an amended complaint clarifying that he was alleging that his number was on a preproduced list whose numbers were called randomly or sequentially (just as Plaintiff alleges here) dismissed it again, this time with prejudice. *Camunas* Id., 570 F.Supp.3d 288, 295-296 (E.D. Pa. 2021). *Morales v. Sunpath*, 2022 U.S.Dist. LEXIS 17858, 2022 WL 610766 (D.Del. February 1, 2022), cited by Plaintiff for the same proposition, refused to dismiss largely because the plaintiff had plausibly alleged that he was called using an artificial, prerecorded

---

[2] In the third case Plaintiff cites, *Smith v. Vision Solar LLC*, 2022 U.S.Dist. LEXIS 72607, 2022 WL 1172985 (E.D. Pa. April 20, 2022), the Court denied a motion to strike the proposed testimony of an expert witness to the effect that the dialing system at issue was a predictive dialer that also used a random and sequential number generator; the Court made no pronouncement to the effect that this particular system qualified as an ATDS, or that predictive dialers in general qualified as ATDSs.

4

voice, which is separately prohibited by the TCPA and survives *Facebook*, and also relied on "dozens" of automated calls made to the plaintiff; moreover, unlike the instant case, the *Morales* plaintiff did not argue that his number came from a preproduced list. Likewise, in *Swartz v. JPMorgan Chase Bank, N.A.*, 2022 U.S. Dist. LEXIS 60610, 2022 WL 987883 (M.D. Pa. March 31 2022), the plaintiff alleged that she received over 160 phone calls from Chase over a six-month period, with at least 15 of those calls using an artificial or prerecorded voice.

While Plaintiff's allegation in his Complaint that Defendants called him from a stored list is enough to defeat his claim that an ATDS was used to call him, he also fails to allege facts permitting an inference that an ATDS was used. He alleged that he received five calls to one of his numbers over two days and a sixth call on another number nine months later; that the two calls he answered were met (with no pause or delay) by a human voice, after which he hung up; and that he did not answer the other four calls. Complaint ¶¶ 38-43. These facts are insufficient to support a plausible inference that an ATDS was used, and his claim must be dismissed.[3]

### PLAINTIFF'S COMPLAINT DOES NOT STATE A CLAIM UNDER THE PTRA

Plaintiff asks this Court to ignore the decisions in *Shelton v. FCS Capital LLC*, 2019 U.S. Dist. LEXIS 213179 2019 WL 6726404 (E.D. Pa. December 11, 2019) and *Perrong v. MLA Int'l Inx.*, 2022 U.S. Dist. LEXIS 36759, 2022 WL 1238603 (M.D. Fl. March 2, 2022) that dismiss claims alleging violations of the Pennsylvania Telemarketer Registration Act, 73 Pa. Cons. Stat.

---

[3] The Supplemental Authority cited by Plaintiff, *Smith v. Vision Solar LLC*, 2023 U.S. Dist. LEXIS 44180, 2023 WL 2531097 (E.D. Pa. March 16, 2023) in no way improves the viability of Plaintiff's case. Where, as here, a Plaintiff alleges facts that demonstrate that an ATDS was not used, and fails to allege sufficient facts supporting an inference of ATDS use, he has failed to state a claim and dismissal is proper.

§2241 ("PTRA") because there is no private right of action under the PTRA, maintaining that these decisions were a result of a plaintiff's "inartful pleading."

Plaintiff attempts to circumvent these decisions by stating that he, like the plaintiff in *Bower v. Nat'l Admin. Serv. Co., LLC,* 2022 U.S. Dist. LEXIS 48027, 2022 WL 821166 (M.D. Pa. March 17, 2022) instead alleged a violation of the PTRA as a "predicate violation" of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa. Cons. Stat. 201 ("UTPCPL"), which allows for a private right of action. He also claims that he alleged that Defendants violated §201-2(4) (XVII)(A) of the UTCPL "outright" (i.e. directly) since they "plac[ed] calls without identifying [themselves]." Plaintiff's Memo at 13.

Nowhere in Plaintiff's complaint did he allege a direct violation of the UTPCPL, and in particular he did not mention §201-2(4)(XVII)(A).[4] Instead, Plaintiff invoked §2245.1 of the PTRA, which prohibits blocking names and telephone numbers and using devices to prevent a call recipient from screening a call, which clearly does not apply to the claims herein and for which he alleged no supporting facts. See Complaint ¶71 and Moving Memo, p. 12.

However, even if this Court were to ignore Plaintiff's inartful pleading and credit his argument that his Complaint alleged violations of the PTRA as a predicate violation of the UTPCPL, as well as alleging a direct violation of the UTPCPL, his claim still fails. The UTPCPL provides a private right of action only for persons who "purchase[] or lease[] goods primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property' as a result of a defendant's violation of the UTPCPL." *Shelton*, Id. at *7 citing 73 Pa. Cons. Stat. 201-9.2(a). Like the plaintiff in *Shelton*-and unlike the plaintiff in

---

[4] Defendants deny that they failed to identify themselves under §201-2(4)(XVII)(A) if, as Plaintiff contends, the callers stated that they were calling from "CMI Research."

6

*Bower,* who bought an auto warranty policy from defendants therein (*Bower,* Id. at *3 and Fn 6)-- Plaintiff has not alleged that he purchased or leased goods from Defendants and thereby suffered an ascertainable loss of money or property.

### PLAINTIFF'S COMPLAINT DOES NOT STATE A CLAIM FOR VIOLATION OF THE TCPA'S IMPLEMENTING REGULATIONS IN 47 CFR §64.1200

**a. Plaintiff cannot state a claim based on a violation of 47 CFR §64.1200 (d)(1) and (6)**

For the reasons stated in Defendants' Moving Memo at pp. 13-16 and discussed at length in *Perrong v. South Bay Energy Corp.*, 2021 U.S. Dist. LEXIS 70715, *4-8, 2021 WL 1387506 (E.D. Pa. April 13, 2021) Plaintiff cannot state a claim for violation of the implementing regulations codified at 47 CFR §64.1200 (d)(1) and (6), (regulating internal do not call lists and internal do not call policies), which, by their terms, apply only to individuals who have directed a specific company not to call them. Whether the issue is characterized as Plaintiff's lack of "standing" or failure to satisfy the "regulatory prerequisite" it is clear that the burden of alleging that he can meet the requirements of the regulation lies with Plaintiff, and by not alleging that he directed defendants not to call him, he has failed to do so. See *South Bay,* Id. at *4 ("As the party invoking the Court's jurisdiction, Mr. Perrong must allege facts that demonstrate his standing to bring suit" citing *LaSpina v. SEIU Pennsylvania State*, 985 F.3d 278, 284 (3d Cir. 2021.))

Plaintiff's attempts to distinguish his earlier case against *South Bay* from his case against defendants in the instant case are unpersuasive. First, he states that in *South Bay,* "the defendant hired a third-party marketing firm to place the calls." But the Court in *South Bay* specifically held that "Mr. Perrong never directed South Bay, Webman's World, [third-party marketing firm] or Mr. Webman [third-party marketing firm's owner and operator] not to call him." Id. at *5. Next, Plaintiff argues that the fact that he never asked any of the *South Bay*

7

defendants not to call him distinguishes that case from this one; but in the instant case, too, he never asked either defendant not to call him.

Plaintiff apparently maintains that his allegation that he hung up on a single call is sufficient to constitute a specific direction that he be put on Defendants' internal due-not-call list. It does not. Moreover, the case he cites in support, *Krakauer v. Dish Network* L.L.C., 311 F.R.D. 384, 389 (M.D.N.C. 2015), aff'd 925 F.3d 643 (4th Cir. 2019) stands for no such proposition. In *Krakauer*, the plaintiff called Dish to ask if Dish could *stop calls to him* requesting that he switch from Direct TV to Dish; and Dish interpreted this call as a request to be put on its internal do not call list, and placed plaintiff on the list. Id. at 390. Plaintiff made no such request that calls stop. See also *Buja v. Novation Capital, LLC*, 2017 U.S. Dist. LEXIS 231500, *16 (S.D. Fl. March 31, 2017) ("Unlike the case in *Krakauer*, where the evidence demonstrated that the plaintiff wanted the telemarketer to 'stop' calling him…Plaintiff's brief words during the May 2014 call, i.e. 'no, uh, thanks a lot by goodbye,' and termination of the call did not amount to a directive for Defendants to do anything, much less stop calling him.")[5]

b. **Plaintiff cannot state a claim based on a violation of 47 CFR §64.1200 (c )**

Nor can Plaintiff state a claim against defendants for violation of 47 CFR §64.1200(c) for allegedly calling him although he was on the national Do Not Call registry, as that regulation applies only to "telephone solicitations" defined in pertinent part as:

> "[T]he initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person…"

---

[5] Plaintiff's argument that he should not be required to "seek out the Defendants in order to send them a more explicit Do Not Call request" (Plaintiff's Memo at 18) also rings hollow when Plaintiff could have made this request to the actual human who called him.

8

47 CFR §64.1200(15); See also 47 U.S.C. §227(a)(4). Plaintiff never even listened to defendant's calls and can allege no content that might qualify them as "telephone solicitations." See Moving Memo at 16-17 and *Camunas v. Nat'l Republican Senatorial Comm.*, 570 F.Supp.3d 288, 299 (E.D. Pa. 2021) (Citing legislative history that "[t]o come within the definition [of telephone solicitation], a caller must encourage a commercial transaction.")

Plaintiff's argument that he has alleged that Defendants' calls were a "pretext" for a sale of property, goods or services in sufficient factual detail to survive a motion to dismiss do not pass muster. Most of the cases that Plaintiff cites (*Scoma*, *Drug Reform, Comprehensive Health Care, Mauth*)[6] do not even involve telephone calls, but instead allege receipt of "unsolicited advertisements" by fax under a different section of the TCPA (47 U.S.C. §227 (b)(1)(C)) and CFR provision that are not applicable here. In the single case he cites involving phone calls, *Fiorarancio v. WellCare Health Plans, Inc.*, 2022 U.S. Dist. LEXIS 5297, 2022 WL 111062 (D.N.J. January 11, 2022) Plaintiff received over twenty calls referencing WellCare Health Plans' "Healthy Living Program," a free service offered to those at risk of experiencing a drug therapy program, referring to an "educational health program," and an "in home health assessment visit," services that were "part of the WellCare membership" and inviting Plaintiff to make a dental appointment, referencing his "coverage under the dental plan." Id. at *2-3. All of these allegedly free offers discussed the defendant's products or services, and required the plaintiff to make additional contacts with WellCare where he would be exposed to advertising of the Company's goods and services. Id. at *7-8.

---

[6] *Scoma Chiropractic, P.A. v. Nat'l Spine & Pain Ctrs. LLC*, 2021 U.S. Dist. LEXIS 46655, 2021 WL 949613 (M.D. Fla. March 12, 2021); *Drug Reform Coordination Network, Inc. v. Grey House Publ'g., Inc.*, 106 F.Supp.3d 9 (D.D.C. 2015); *Comprehensive Health Care Sys. of the Palm Beaches, Inc. v. M3 USA Corp.*, 232 F.Supp.3d 1239 (S.D. Fla. 2017); *Mauthe v. Millennium Health LLC*, 58 F.4th 93 (3d Cir. 2023).

The same cannot be said here. Plaintiff was made no "free offers;" no company's products or services were mentioned. In fact, *nothing* was mentioned to Plaintiff, because Plaintiff at no time spoke to Defendants or listened to the contents of their survey. Plaintiff cannot allege that the contents of a call were a "pretext" for a sale of property, goods or services when he cannot even allege the contents of the call.

## CONCLUSION

Based on the foregoing and on Defendants' Moving Memorandum, Plaintiff has failed to state a claim on which relief can be granted on any of his claims, and cannot state such a claim. Defendants respectfully request that this Court dismiss Plaintiff's Complaint in its entirety, with prejudice.

Dated: March 20, 2023
   New York, New York

/s/ Elizabeth A. McCoy
Elizabeth A. McCoy (EAM -8448)
(*Admitted Pro Hac Vice*)
*Attorneys for Defendants*
HILL, BETTS & NASH LLP
14 Wall Street, Suite 5H
New York, New York 10005
(212) 839-7000

George Zacharkow, Esq.
Deasey, Mahoney & Valentini, Ltd.
1601 Market Street, Suite 3400
Philadelphia, PA 19103
(215) 587-9400

10

## CERTIFICATE OF SERVICE

I, ELIZABETH McCOY, certify that on the 20th day of March 2023, I served copies of DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION PURSUANT TO FRCP 12b(6) TO DISMISS PLAINTIFF'S COMPLAINT upon:

**ANDREW R. PERRONG**
1657 THE FAIRWAY #131
JENKINTOWN, PA 19046

by depositing a true copy of the papers, enclosed in a post-paid wrapper, in an official depository under the exclusive care and custody of the U.S. Postal Service, and by filing electronically by operation of the Court's electronic filing system.

HILL BETTS & NASH LLP

*/s/ Elizabeth A. McCoy*
Elizabeth A. McCoy