IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANDREW R. PERRONG | : CIVIL ACTION |
| | : |
| v. | : NO. 22-3733 |
| | : |
| CMI MARKETING RESEARCH INC. | : |
| | : |

## MEMORANDUM

**MURPHY, J.**                                                                                   September 26, 2023

This is one of Andrew Perrong's many lawsuits against companies who annoy him with unwelcome telephone calls. They are indeed annoying, but whether they are actionable depends on how the calls were made, among other things. In this particular complaint, Mr. Perrong fails to state a claim, so we dismiss it without prejudice. He has leave to amend.

**Background**[1]

Defendant CMI is a company that "conducts marketing via telephone under the pretext of survey calls targeting individuals in Pennsylvania." DI 6 ¶ 19. CMI's calls involve a "survey" that allegedly leads to "discounts on advertisers' goods and services under the guise of a reward for having completed the bogus survey." *Id.* at ¶ 20 (cleaned up). Plaintiff Mr. Perrong is an individual who has two personal telephone numbers listed on the national and Pennsylvania do-not-call registries. *Id.* at ¶¶ 30-33.

This case stems from the following six calls from CMI to one or the other of Mr. Perrong's two numbers:

- Call from the caller ID 385-200-8187 on December 20, 2021 at 10:14 a.m. The caller stated that they were calling from "CMI Research." Mr. Perrong hung up.

---

[1] The operative complaint is the amended complaint filed November 22, 2022. DI 6.

- Call from the caller ID 706-309-6410 on December 20, 2021 at 12:35 p.m.
- Call from the caller ID 309-233-4036 on December 21, 2021 at 10:02 a.m.
- Call from the caller ID 716-214-3874 on December 21, 2021 at 12:32 p.m.
- Call from the caller ID 424-440-1815 on December 21, 2021 at 1:16 p.m.
- Call from the caller ID 660-260-6917 on September 12, 2022 at 7:44 p.m.  The caller stated that they were calling from "CMI Research."  Mr. Perrong hung up.

*Id.* at ¶¶ 38-43.

When Mr. Perrong called any of the caller ID numbers back, he heard the following identical prerecorded message: "[y]ou have reached CMI Research.  We are strictly a political survey company and are not attempting to sell you anything.  However, if you wish to be removed from our call list, please leave your name and number.  Thank you."  *Id.* at ¶ 44.  Following that, a different voice stated: "[p]lease leave your message after the tone.  When done, hang up or press the pound key."  *Id.* at ¶ 45.  The latter message was in the voice of Allison Smith, known to be the "voice of Asterisk," which is in turn known to be software that supports automatic telephone dialing system (ATDS) capabilities.  *Id.* at ¶¶ 45, 48-50.  Those capabilities include random and sequential number generation as well as the ability to "dial those numbers using the sequential (or random) number generator."  *Id.* at ¶ 56.

As for how CMI came to dial Mr. Perrong's two phone numbers in particular, he alleges that the numbers were on the "list" mentioned by the CMI message, and that as a matter of logic, "the computerized list itself could be used to call recipients sequentially from the list using an ATDS."  *Id.* at ¶ 53.

The complaint advanced three counts: violation of the Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227(b)(3)(B); violation of the Pennsylvania Telemarketer Registration Act (PTRA), 73 Pa. Cons. Stat. § 2241; and violation of the TCPA's implementing regulations codified at 47 C.F.R. § 64.1200.  DI 6.  CMI filed a motion to dismiss all three counts.  DI 13.

First, CMI argues that it is not a violation of the TCPA to make calls from a stored list, and in any event, the amended complaint lacks plausible allegations that an ATDS was used. DI 13-1 at 8. Second, CMI argues that there is no private right of action under the PTRA, and even if one is supplied by the Pennsylvania Unfair Trade Practices and Consumer Protection Law (UTPCPL), CMI's calls are not covered by that law. *Id.* at 10. Third, CMI argues that the amended complaint fails to state violations of the particular regulations Mr. Perrong cites. *Id.* at 13. We will take each argument in turn.

**Analysis**

"Under Rule 12(b)(6), a motion to dismiss may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds the plaintiff's claims lack facial plausibility." *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)). Although a court must accept the factual allegations in a complaint as true, it is not compelled to accept "unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) (quoting *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007)). Additionally, a court need not assume that a plaintiff can prove facts that the plaintiff has not alleged. *Associated Gen. Contractors of Cal. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

In *Ashcroft v. Iqbal*, the United States Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." 556 U.S. 662, 679 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice." *Id.* at 678. "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 545.

**A. The amended complaint fails to state a violation of the TCPA.**

Mr. Perrong alleges that the CMI calls fall within 47 U.S.C. § 227(b)(1)(A)(iii), which provides that:

> It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States . . . to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) *using any automatic telephone dialing system* or an artificial or prerecorded voice . . . to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call, unless such call is made solely to collect a debt owed to or guaranteed by the United States;

(emphasis added). The dispute here centers around the "using any [ATDS]" language emphasized above. An ATDS is "equipment which has the capacity – (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." *Id.* § 227(a)(1).

The Supreme Court examined the statutory definition of ATDS and explained that the clause "using a random or sequential number generator" modifies both the verbs "store" and "produce," such that equipment "must have the capacity either to store a telephone number using a random or sequential generator or to produce a telephone number using a random or sequential number generator" to qualify as an ATDS. *Facebook, Inc. v. Duguid*, 141 S. Ct. 1163, 1167 (2021).[2]

The next question is whether the statute covers only calls made using the random or

---

[2] Before *Duguid*, some circuits had held that the phrase "using a random or sequential number generator" modifies "produce" but not "store." *See, e.g.*, *Duguid*, 141 S. Ct. at 1168.

4

sequential number generator feature of an ATDS, or if it could be sufficient to merely make the calls using an ATDS with that capability.  Considering this question, the Third Circuit first concluded that under *Duguid*, the *definition* of an ATDS (meaning, § 227(a)(1)) could be met by mere capability.  *Panzarella v. Navient Sols., Inc.*, 37 F.4th 867, 874-876 (3d Cir. 2022).[3]  But that leaves § 227(b)(1)(A)(iii), which on its face requires "using any [ATDS]."

The Third Circuit then analyzed the phrase "using any [ATDS]" in some detail, concluding that it operates to "prohibit making calls that use an ATDS's autodialing functionalities."  *Panzarella*, 37 F.4th at 879.  "Therefore, to use an ATDS as an autodialer, one must *use* its defining feature — its ability to produce or store telephone numbers through random- or sequential-number generation."  *Id.*

So the question here is whether the amended complaint plausibly alleges that CMI *used* the defining feature of an ATDS, i.e., "produc[ed] or stor[ed] telephone numbers through random- or sequential-number generation."  *Id.*  It does not.  It is a bit difficult to tell what the amended complaint is trying to say about how Mr. Perrong's numbers came up.  The numbers were on CMI's list, and we might logically infer that "the computerized list itself" was used to make the calls. DI 6 at ¶ 53.  But then where does the necessary "random- or sequential-number generation" come into the picture?  We cannot tell.  Mr. Perrong's opposition brief offers a somewhat inscrutable theory that asks far, far too much in the way of drawing inferences in his

---

[3] Reasonable minds could differ.  As Judge Greenaway pointed out in his concurrence, the Supreme Court's words were that "Congress' definition of an autodialer requires that in all cases, whether storing or producing numbers to be called, the equipment in question must use a random or sequential number generator."  *See id.* at 882-85, 883  n.2 (Greenaway, J., concurring) (quoting *Duguid*, 141 S. Ct. at 1170).

5

favor. If he is serious about it, he will have to plead it in a clear way.[4] As the amended complaint stands, there is nothing close to a plausible pleading that CMI was *using* an ATDS's "ability to produce or store telephone numbers through random- or sequential-number generation." *Panzarella*, 37 F.4th at 879.

### B. The amended complaint fails to state a violation of the PTRA/UTPCPL

Mr. Perrong acknowledges that there is no private right of action under the PTRA, but argues that the amended complaint states a claim using the UTPCPL's private right of action. 73 Pa. Cons. Stat. § 201-9.2(a) (providing "a private action to recover actual damages" for violations declared unlawful by section 3 of the act). Mr. Perrong does not cite any authority explaining how or why the PTRA could serve as a predicate claim under the UTPCPL, but it does not matter. There appears to be no dispute that the UTPCPL's private action applies only to a "person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal" as a result of covered unlawful practices. *Id.* The amended complaint does not plead any facts bearing on that requirement of the UTPCPL, and therefore that claim must be dismissed.

---

[4] The gist of the theory seems to be that the telephone numbers themselves are not randomly or sequentially generated — they are picked from a list. But when the system picks a telephone number from the list, it is doing so either sequentially or randomly (and not intentionally based on specific criteria). And, in turn, when the computer system selects the telephone numbers either sequentially or randomly off the list, that somehow satisfies the Third Circuit's requirement for "random- or sequential-number generation." Judge Goldberg and Judge Wolson both offered thoughtful analyses of this scenario that, if relevant in this case, will be a challenge for Mr. Perrong to overcome. *See Perrong v. Bradford*, 2023 WL 6119281 (E.D. Pa. Sept. 18, 2023); *Perrong v. Montgomery Cnty. Democratic Comm.*, 2023 WL 4600423 (E.D. Pa. July 28, 2023). But frankly, we are not entirely sure what Mr. Perrong is suggesting here, and we are disinclined to provide an advisory opinion based on our guesswork and possible inferences.

### C. The amended complaint fails to state a violation of the TCPA regulations relied upon

The amended complaint points to three violations of the TCPA's regulations:[5] (i) calling a number on the national Do-Not-Call registry, 47 C.F.R. § 64.1200(c)(2); (ii) calling without having a Do-Not-Call policy in place, § 64.1200(d)(1); and (iii) calling without maintaining the Mr. Perrong on their internal Do-Not-Call list, § 64.1200(d)(6).  DI 6 ¶¶ 76-77.

The claims based on (d)(1) and (d)(6) may be easily dispensed with because those regulations pertain to CMI's obligation to create and maintain a "list of persons who request not to receive such calls made by or on behalf of that person or entity." § 64.1200(d).  "[T]hat person or entity" is the person or entity who initiates the calls — here, CMI.  *Id.*  The amended complaint does not contain any allegations about CMI's list and whether or not Mr. Perrong was on it.  Mr. Perrong apparently abandons any argument based on the national registry,[6] instead arguing that when he hung up the call from CMI, that triggered CMI's duty to add him to its own internal do-not-call list.  That argument makes little sense and is entirely inconsistent with the regulations, which contemplate receiving do-not-call *requests* from residential telephone subscribers.  § 64.1200(d)(3).

Turning to (c)(2), that subsection prohibits calls to individuals on the national do-not-call

---

[5] Congress allows for this type of action based on violating the regulations: "[a] person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may, if otherwise permitted by the laws or rules of court of a State bring in an appropriate court of that State . . . an action based on a violation of the regulations prescribed under this subsection . . . ." 47 U.S.C. § 227(c)(5)(A).

[6] Perhaps because of Judge Wolson's persuasive reasoning in *Perrong v. South Bay Energy Corp.*, 2021 WL 1387506 (E.D. Pa. Apr. 13, 2021).

list, with certain exceptions. Mr. Perrong might have something here, except that this regulation applies only to "telephone solicitation," § 64.1200(c), which means "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services," § 64.1200(15). The amended complaint speculates that CMI's "survey" call is pretext for solicitation, which seems like the sort of thing that could be true, but for purposes of the motion to dismiss, there are simply not enough plausible facts alleged to get over the Rule 12(b)(6) hurdle.

**Conclusion**

For the reasons discussed, we grant CMI's motion to dismiss (DI 13) without prejudice, and grant Mr. Perrong leave to amend his complaint **within fourteen (14) days**, if the facts allow him to do so.